# THEODORE ENGHOLM v. NORTHLAND TRANSPORTATION COMPANY.
## CARL ENGHOLM v. SAME DEFENDANT.[1]

October 30, 1931.

Nos. 28,543, 28,544.

[1]Reported in 238 N. W. 795.

*A. L. Janes* and *J. H. Mullally,* for appellant.
*Ryan, Ryan & Ryan,* for respondents.

WILSON, C. J.

The appeals are from orders denying alternative motions for judgments non obstante or new trials.

Theodore Engholm .drove a Ford car westerly on Front street in Brainerd. His 20-year old brother Oscar was riding in the car beside him. Defendant's 33-passenger motor bus was traveling northerly on Seventh street, which intersects Front street from the south only, and turned east on Front street. The bus was 33 feet long, about eight feet wide, weighed nine tons, and was equipped with air brakes. A collision between the Ford and the bus occurred at about 60 feet east of the east extended line of Seventh street as the two vehicles met traveling in opposite directions.

In an action to recover for personal injuries and damages to his car, Theodore Engholm obtained a verdict for $350. Carl Engholm, as the father of Oscar Engholm, in a suit for the benefit of the son, obtained a verdict for $500, which has been reduced by the trial court to $250.

Both cases were tried together and are here upon a single record but on separate appeals.

Front street is 50 feet wide. Seventh street is 55 feet wide. These streets are paved, and a building stands at the southeast corner of the street intersection, with the usual obstruction of view. There were cars parked on both sides of Seventh street and also on both sides of Front street, though the record is not definite as to how near the corner they were so parked. In order to make the turn into Front street and avoid hitting the curb at the corner, the length of the bus necessitated the left-hand front wheels to

pass on the left-hand side of the street from which it was coming or on the left-hand side of the street to which it was going. The law is that it should not do the former. 1 Mason, 1927, § 2720-16. The testimony indicates that perhaps the left-hand wheels of the bus in this particular instance went over the center line of Front street as much as seven feet. The statutory mandate to keep on the right half of the traveled portion of the highway is relaxed when it is impracticable to do so. 1 Mason, 1927, § 2720-9. The testimony is that the bus cannot be turned at such a corner under such circumstances without getting over on the left-hand side of one of the two streets. It would seem therefore that the jury could conclude that such impracticability was present in this case.

The evidence does not necessarily show that the bus was being operated at such statutory speed (1 Mason, 1927, § 2720-4) as to make a prima facie case of negligence; but it does show speed that the jury could say was not consistent with reasonable care under the circumstances. One witness puts the speed at 15 miles per hour. The driver could not legally make the turn without getting on the left-hand side of Front street. As he turned into Front street the bus driver saw the Ford. From a numerical standpoint, defendant's testimony as to speed was the stronger. The driver and three apparently disinterested witnesses put the speed at from three to six miles per hour, and one witness said: "Very slowly. Almost stopped."

The Ford car traveled on its right-hand side of the street two to six feet from the center line. Some witnesses say that it seemed to turn to its left and was in about the center of the street just before and at the time of the collision. The two men in the Ford say they were traveling 15 miles per hour. Other witnesses put their speed at from 25 to 30 miles, perhaps slowing up some just before the accident.

The question of defendant's negligence was for the jury.

█ Theodore Engholm testified that he saw the bus just as it went over the center line of Front street and that the bus was then headed northeasterly. The bus was then about on the extended

easterly line of Seventh street. At that time the two vehicles were about 120 feet apart. It was daytime. The collision occurred about 60 feet east of the extended easterly line of Seventh street. He claims to have "slammed on the brakes" apparently as soon as he was conscious of danger, which should have been obvious sooner had he appreciated it. Evidently he did not greatly reduce his speed before the collision. He was thrown out of the Ford, and his brother was rendered unconscious; yet Theodore Engholm testified that at the speed he was going, at 15 miles per hour, he could have stopped his car in six feet. His car was on the right-hand side of the street. There is testimony indicating that each vehicle was traveling 15 miles per hour. If they were 60 to 120 feet apart, they would collide in about one and one-half to three seconds. Each was in plain sight of the other, and it is difficult to understand why the driver of the Ford could not have avoided the collision. This plaintiff was on a street 50 feet wide. It is possible that cars were parked at his right-hand curb. The record does not show whether they were parked parallel or diagonally to the curb. We cannot determine the exact space between the curb or the parked cars, if any, at this particular place and the center line of the street over which the bus hung. The fact is, however, that Theodore Engholm insists that as he drove down the street he was "looking straight ahead." If so, the bus was there to be seen, and he either ignored its obvious presence or blindly continued in the face of an open danger. Of course he may have been mistaken in his distance, which indicates that he saw the bus when 120 feet away. If so, prudence required some effort to turn the Ford to avoid the head-on collision which did occur. He makes no claim that parked cars forbade such effort on his part in his peril. He does not suggest any distracting circumstances. His failure to explain is significant.

Where two motor vehicles are approaching each other, traveling in opposite directions, neither is justified in taking close chances. It seems quite apparent that this plaintiff did not "slam on the brakes" until some time after he first saw the bus passing over the center line; and in the meantime, without slacking his speed, he

proceeded directly toward the bus. While he says he could have stopped his car within six feet while going at the speed he was traveling, the fact remains that he did not stop it nor attempt to do anything else to avoid the accident.

We cannot see how reasonable minds can fail to agree that this plaintiff was guilty of contributory negligence; hence we hold that he was as a matter of law.

■ Oscar Engholm was looking ahead but did not see the bus. He apparently did not notice it. Evidently he was not conscious of any danger. There was nothing to attract his attention, and under the circumstances and facts the responsibility for avoiding the collision did not rest with him. The driver was in charge of the car. There was nothing in the record to sustain a verdict holding Oscar Engholm guilty of contributory negligence; consequently the court properly refrained from submitting this question to the jury. Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Fitzgerald v. Village of Bovey, 174 Minn. 450, 219 N. W. 774.

■ The measure of damages to an automobile resulting from a collision is the diminution in the value. Where the car is materially wrecked, such damages are usually established by proving the value of the car before and after. Where such damages to a car are of such a character that the car may be repaired and put in substantially as good a condition as before, the reasonable cost of restoring the car to its former condition is the proper measure of damage. This qualification of the rule however is applicable only to the particular facts of the case which may justify its application. In the instant case the court received evidence under the general rule. Later, over objection of the defense, he received evidence as to the cost of repairing the car, and the reception of this evidence is now assigned as error.

We think the evidence was properly received. The testimony given in support of the general rule rests in opinion, and the actual cost of repairs, when the car can be substantially repaired, should be helpful. The amount actually, reasonably, and necessarily paid out in making repairs to damaged property of this character ought

always to be admissible either as tending to support or to refute the opinion evidence for or against the general rule. Doubtless there may be many cases where such testimony should not be received, but we see no harm to come from receiving such evidence when the vehicle has been repaired in good faith and is in service. Evidence is always admissible to show that the car is not in as good condition as it was before, and the reasons therefor, even though it has been so repaired as to make it serviceable.

The order denying defendant's motion in the Theodore Engholm case is reversed with directions to enter judgment for defendant.

The order denying the motion in the Oscar Engholm case is affirmed.

HOLT, J. (dissenting).

I dissent to the reversal in the case of Theodore Engholm. I consider the issue of his contributory negligence one of fact for the jury.

DIBELL and OLSEN, JJ. (dissenting).

We concur in the dissent of Mr. Justice Holt.

