MINA BELLE FINDLEY v. RILEY BRITTENHAM.[1]

February 13, 1937.

No. 31,097.

---

[1]Reported in 271 N. W. 449.

*McCune & McCune,* for appellant.
*Paul C. Cooper* and *Frundt & Morse,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff recovered a verdict for injuries sustained in an automobile collision at the intersection of U. S. trunk highway No. 16 and trunk highway No. 15 near the easterly limits of Fairmont. Defendant was unsuccessful on his motion for new trial and appeals from the order.

The collision occurred shortly after 12 o'clock noon September 28, 1935. Both roads were dry and of ample width. Atmospheric conditions were ideal. The country is level and the view unobstructed except for certain buildings erected and maintained by the Martin County Fair Association, located at the southwesterly corner of the intersection, *i. e.,* to the right of one traveling easterly upon highway No. 16 and to the left of one traveling northerly upon highway No. 15. Highway No. 16 is a "through highway" and is protected at intersecting streets and highways with adequate "stop" signs.

Plaintiff was riding in a Ford truck owned by her husband. The driver was her 16-year old son Edgar, a duly licensed driver. Defendant was driving northerly upon highway No. 15. Some 300 feet south of the intersection there was a sign reading "Trunk Highway 300 feet," and approximately 75 feet south of the intersection was a "stop" sign. Defendant either did not see or heedlessly went by both signs and entered the intersection at a speed of not less than 35 miles per hour. That is his testimony. There is other testi-

mony in the case which would justify a finding of much greater speed. The Ford truck was traveling easterly upon highway No. 16 at a rate of between 15 and 20 miles per hour. Because of the fair association's buildings, located, as has been said, to the immediate right of the highway, neither driver nor plaintiff could see beyond the corner until the same was practically reached. Plaintiff testified that just as they passed that corner she looked to her right and observed defendant's car approaching at a very rapid rate of speed. She describes the situation thus: "I just said, 'Sonny!' That is all I had time to do—he crashed right into us." There is no dispute about defendant's car striking the Ford on its right side with such force that as a result of the impact the truck was thrown completely around and landed on its side, facing in the opposite direction. At the time of impact the Ford truck was some four feet beyond the center of the intersection. Plaintiff was thrown out upon the pavement and suffered injuries, the extent of which will be further related when the question of damages is reached.

The court, upon this evidence, which has been recited in the light most favorable to defendant, concluded that defendant's negligence was established as a matter of law and that plaintiff was not guilty of contributory negligence. The jury was therefore instructed that the only question to be considered and determined by them was the amount of damages.

Defendant claims error in several respects. We think the issues presented thereby may be considered under four subdivisions:

(1) Is defendant's negligence so clearly established as to leave no fact issue for a jury's determination?

(2) Was his negligence, if so established, the proximate cause of plaintiff's injuries?

(3) Is there any evidence in the record justifying a submission of plaintiff's contributory negligence to the jury?

(4) Are the damages so excessive as to indicate passion and prejudice?

It is urged in defendant's behalf that the purpose of the statute relating to obedience to stop signs (1 Mason Minn. St. 1927,

§ 2720-21) "is to protect traffic on the through highway by having drivers come on to it from the side road with the advantage of the better observation and better control of their cars resulting from stopping," so as to thereby "protect traffic on the through highway from the hazard of having drivers enter from side roads without these advantages and aids to safe driving." He further states: "If the accident was caused by the fact that the defendant did not have the advantage of observing from and operating a car starting slowly from a stop, we concede there would be liability unless relieved of liability for some other reason." No "other reason" is suggested nor could there well be such upon the evidence here appearing. Granting that defendant's contention is right, that the violated statute is *prima facie* evidence of negligence only, yet the fact remains that defendant's own testimony supports the *prima facies* furnished by the statute. There is no evidence *contra.* That being so, if defendant's negligence was not the proximate cause of plaintiff's hurt, then, in the language of the trial court, "it would be most difficult to conceive of negligence that would be." Further discussion is wholly unnecessary. We think that upon this record the court was not only justified in instructing the jury as it did, but the state of the record compelled that it do so. If the court had submitted the question of defendant's negligence and proximate cause to the jury and a verdict for defendant had been reached, no court could, in the exercise of sound discretion, have done otherwise than set it aside as without support—if such motion were made. The language used by this court in Brown v. Murphy T. & S. Co. 190 Minn. 81, 86, 251 N. W. 5, 7, fits the present case:

"With no regret we decline the invitation of the case to add to the already excessive literature of the law dealing, or attempting to deal, with the doctrine of proximate cause, much of which both 'in case and in commentary is mystifying and futile.' Cardozo, Paradoxes of Legal Science, 85. The search is for the 'jural cause.' *Id.* 82. There is enough in the evidence to sustain the conclusion that the concurring negligence of the two truck drivers made such a cause."

Here the "jural cause" is obvious. Defendant's conduct furnishes ample basis for liability. Even if the driver of the truck was also negligent (§ 2720-4[b]3) that in no way exonerates defendant. From the cited case (190 Minn. 85) the following quotation seems pertinent:

"Enough it is that evidence justifies the conclusion that the servants of both appellants were guilty of negligence 'concurring with one or more efficient other causes' to injure plaintiff. Where two such causes 'combine to produce injuries,' the author of neither can escape liability 'because he is responsible for only one of them.' " (Citing cases.)

■ Is the record such as to require the submission of plaintiff's alleged contributory negligence to the jury? We think not. She was not the owner of the vehicle nor was she exercising any control over the driver. He appears to have been a thoroughly competent young man and was duly licensed to operate motor vehicles of the type then in his hands. As such, plaintiff was not required to guide or instruct him. They were not engaged in any joint enterprise. The rate of speed cannot be said to be such as to have required of her the duty of warning against any apparent danger of which he, as driver, appeared unaware. We cannot see anything in this record which affirmatively shows any failure on her part to exercise reasonable care for her own safety. There is nothing appearing in the record that she failed to do anything which was her duty to do. Defendant's automobile came crashing through the intersection at such high rate of speed that the moment it came in sight of those occupying the truck the resulting accident was inevitable. Under the circumstances, we think the cases cited by the trial court sustain the view by it taken: Fitzgerald v. Village of Bovey, 174 Minn. 450, 219 N. W. 774; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Engholm v. Northland Transportation Co. 184 Minn. 349, 238 N. W. 795; Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670.

■ Lastly, defendant contends that the court's instructions are erroneous on the question of permanent injuries and that the verdict

is so excessive as to indicate passion and prejudice. As a result of the accident plaintiff was thrown out upon the pavement and suffered severe and very painful injuries. She was unconscious when picked up by her son and in a semiconscious state when brought into the hospital, where she remained for eight weeks and three days. X-rays showed that both of plaintiff's collarbones were broken and four ribs fractured; that she had a deep wound on the back of her head, causing concussion of the brain. This wound did not heal for several weeks. She vomited, at short intervals, for three days after being brought to the hospital, dark fluids apparently containing blood. Her physicians believe this was caused by a lacerated liver. There was an overlapping of one of the fractured collarbones, causing one shoulder to be higher than the other, a permanent disfigurement. One of her physicians testified when questioned as to her chance to regain her former health: "* * * from the injuries that she sustained here, they have left their mark upon her, she undoubtedly will be aware of these all the rest of her life to a certain degree." She will never be able to do her usual household duties as well as before the accident, and she was still suffering from severe headaches and pains across the back of her head at time of trial, something over six months after the accident.

The court instructed the jury on this issue as follows:

"The measure of damages in this case is the allowance by you, as jurors, to Mrs. Findley of such an amount as in your judgment will fairly compensate her for the injuries sustained, taking into consideration the extent and nature of the injuries, the discomfort and pain and suffering endured. You will not consider or allow damages for injuries to be suffered in the future or for doctors' bills and hospital expenses."

The verdict was for $3,500. We cannot say, in view of its approval by the trial court, that it is excessive. See Hillstrom v. Mannheimer Bros. 146 Minn. 202, 206, 178 N. W. 881; Wells v. Weed, 197 Minn. 464, 469, 267 N. W. 379, 382.

Order affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.