MYRTLE THORSTAD v. THOMAS J. DOYLE AND JOHN ROBERG.[1]

April 30, 1937.

Nos. 31,024, 31,130.

[1]Reported in 273 N. W. 255.

544

*Hunt & Palmer,* for appellant John Roberg.

*Baldwin, Holmes, Mayall & Reavill, Thomas J. Doyle,* and *G. A. Myles,* for appellant Thomas J. Doyle.

*William E. Tracy,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's action to recover damages for personal injuries as a result of a collision between a car driven by defendant Doyle, in which she was a passenger, and a car driven by defendant Roberg, resulted in a verdict in her favor and against both defendants for $3,500. Defendant Roberg moved for judgment notwithstanding or for new trial, and defendant Doyle moved for a new trial. The motions were denied, and defendants appealed.

The issues made by the pleadings are these: Plaintiff's complaint is in the usual form where two negligent causes combine to bring about a harmful result. Doyle in his answer pleaded the general issue; also that at the time and place of collision "defendant, John Roberg, carelessly, negligently and unlawfully stopped, halted and parked his said automobile upon said highway and that his negligence was the proximate cause of plaintiff's injury." He admitted that his automobile struck the Roberg car a glancing blow and "thereafter left said highway." By "separate defense" he further alleged that plaintiff and he "were engaged in a joint enterprise"; that he was "then and there acting as the agent and servant of plaintiff, and that if defendant, Doyle, was guilty of any negligence, that caused or contributed to the injuries of plaintiff, such

negligence was the negligence of plaintiff, and further that the negligence of plaintiff caused and/or contributed to her injuries." Roberg pleaded the general issue; also, by way of new matter, that if plaintiff sustained any injury or harm "the same was proximately caused or contributed to by her own negligence and/or the negligence of others over whom this answering defendant had" no supervision or control and for whose negligence he was in no way responsible. Plaintiff by appropriate replies denied the new matters so pleaded.

The accident occurred on U. S. highway No. 61, the main paved and traveled route between St. Paul and Duluth, at some point between Willow River and Sturgeon Lake. The time was between 2 :15 and 2 :30 o'clock in the morning of July 2, 1935. On the day before, plaintiff as a guest passenger accompanied Mr. Doyle from Duluth to St. Paul, where the latter had some professional business requiring his attention. They reached their destination shortly after six o'clock, and Mr. Doyle then attended to his business affairs, finishing about eight o'clock. After that they went to the Lowry Hotel, where they had dinner and remained there listening to music and other forms of entertainment until shortly after midnight, starting back for Duluth about half past twelve in the morning. About 15 miles north of Willow River, something like 100 miles from St. Paul, Mr. Doyle's car ran into the rear of a car driven by Roberg, both cars theretofore having been proceeding northerly upon this highway and both having Duluth as their objective. As a result of the impact the Doyle car left the highway, going into the ditch on the westerly side of the pavement and causing plaintiff the injuries for which she sought and the jury awarded damages.

The weather had been very rainy, and when these people came as far north as Forest Lake they encountered dense fog. That condition continued until and including the time of accident. From Hinckley north the fog was described by the witnesses as "very thick." Both Doyle and plaintiff claim that they had no trouble seeing the red taillights on cars preceding them and that these lights were plainly visible a considerable distance, Doyle claiming

that they were visible as much as a quarter of a mile. The Doyle car was equipped with good lights, duly functioning, and a windshield wiper constantly at work on the driver's side. (There was none such on the side occupied by plaintiff, and as a consequence, because of the fog, plaintiff's vision of what lay ahead was somewhat obscured.) There is genuine dispute in the evidence respecting the existence of a taillight upon the Roberg car. Both Doyle and plaintiff testified that there was no such light. The testimony in Roberg's behalf is that there was a light and that it was functioning properly some 15 miles next prior to the point where the cars collided.

In behalf of Roberg it is claimed that he was driving very slowly because of the heavy fog, having reduced his speed from something like 20 to an estimated 10 to 12 miles per hour. Immediately before the accident, such are his testimony and contentions in his brief, a truck was approaching from the north; that this vehicle had very strong headlights, which, because of the fog, so diffused the lights therefrom as to blind and bewilder him, or at any rate were such as to make it extremely difficult and dangerous to proceed even at the slow speed he had been going; that he slowed up his car because thereof so as to almost reach a standstill; that the first he knew of something being wrong was when he felt a sudden jar or jolt from the rear of his car. Doyle's car had struck his rear left fender, had thence swerved to the left of the road and gone into the ditch on the west side and some distance to the north of his (Roberg's) car. There is no substantial dispute that Roberg was in his own lane of travel, but there is considerable dispute as to whether the car had been stopped, Roberg claiming that he was moving forward slowly, but both Doyle and plaintiff claiming that the car was standing still and was without a taillight. Doyle claims that he was driving approximately 30 miles per hour. Plaintiff said that watching the speedometer needle the rate of speed was between 35 and 40 miles per hour. At any rate, neither plaintiff nor Doyle saw the Roberg car until it was only 15 to 25 feet ahead of them; that then Doyle immediately sought to avoid it by swinging to his

left but was unable to clear the Roberg car, and as a consequence the impact immediately followed.. Doyle's car rolled over, throwing plaintiff clear of it but causing her severe and painful injuries, which will be hereafter more fully described when the question of the amount of damages is reached.

A reading of the record discloses that there is considerable conflict respecting the claims of the two defendants. They are only agreed in respect of one item, that of plaintiff's contributory negligence. When the question of liability is reached, if such there be as to either, then their ways part, and neither is slow about pointing to the other as the sole cause of plaintiff's hurt.

The two questions common to both defendants may as well be discussed and disposed of first: (1) Plaintiff's alleged contributory negligence, and (2) whether the verdict is vulnerable because excessive.

■ Is the record such as to justify the court's view that plaintiff's conduct was free from contributory negligence as a matter of law?

"Contributory negligence is a want of ordinary or reasonable care on the part of a person injured by the negligence of another directly contributing to the injury, as a proximate cause thereof, without which the injury would not have occurred. Another approved definition is 'a failure on the part of a person injured by the negligence of another to exercise ordinary or reasonable care to avoid the injury, without which the injury would not have occurred.' One cannot recover damages for an injury to the commission of which he has directly contributed; and it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would not have prevented it. If his fault, whether of omission or commission, has been a proximate cause of the injury, he is without remedy against another also in the wrong." 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7012, and cases under notes 37, 38, and 39.

"A guest passenger is of course required to exercise ordinary care for his own safety, but that does not mean he has to assume re-

sponsibility for the management of the car." Burgess v. Crafts, 184 Minn. 384, 386, 238 N. W. 798, 799.

Other cases illustrative of this rule are: Vukos v. Duluth St. Ry. Co. 173 Minn. 237, 217 N. W. 125; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Engholm v. Northland Transportation Co. 184 Minn. 349, 238 N. W. 795; Hall v. Gillis, 188 Minn. 20, 246 N. W. 466; Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670; Findley v. Brittenham, 199 Minn. 197, 271 N. W. 449, 451.

The basis upon which defendants place their claim of contributory negligence is Doyle's testimony that she had not found fault with his driving. "She said, in effect, she said, 'My, this fog is terrible,' and I said, 'Yes, it is.' She said, 'I am a little bit nervous about riding in it,' and I said, 'Well, I am sorry; I do not believe you have any occasion to be.' I said, 'I am watching the road very carefully, driving carefully,' but I said, 'If you think I am driving faster than I should or than you want me to, if you will tell me, I will be very glad to slow down and drive any way you want to, because I don't want you to be nervous about this,' and she said, 'No, you are driving all right.' * * * Q. But your recollection is at no time on your trip back from St. Paul did she at any time in substance say to you that she thought you were driving too fast, or that you were driving so fast that she was nervous? A. No, she said she was nervous on account of the fog."

Plaintiff's version in her own words is: "Well, as I started to say before, I objected to the speed; and this last time before the accident, when he asked me if I were still nervous I did not know just what to say because I objected so many times." This conversation to which the parties refer constitutes the last words on this subject before the collision took place. Obviously, what Mr. Doyle did was to assure plaintiff and to lull her into a sense of security that she had no "occasion to be" alarmed as he was "watching the road very carefully, driving carefully." What more could she do? These parties were upon the highway in a situation where because of weather conditions it might be dangerous for her to alight and to seek her own means of transportation or of finding shelter. To

hold a person in plaintiff's situation guilty of contributory negligence under such circumstances as here appear would go far beyond the decisions of this or any other court to which our attention has been called. The car belonged to Doyle and was in his hands and under his complete control. Plaintiff was only a guest passenger. As such she naturally felt timid and reticent about "back seat" or other driving directions. On at least three occasions, so she testified, she had cautioned him about his speed, and in each instance he slowed down, at least for the time being. Naturally and properly she could do no more. She was not required to guide or instruct him. They were not engaged in any joint enterprise. She was not in position to warn him of any danger lurking ahead of which he, as driver, appeared unaware.

This court in Guile v. Greenberg, 192 Minn. 548, 551, 257 N. W. 649, 650, had for consideration the same problem as was presented in the instant case. We said:

"The problem is one of proximate cause. Regardless of how negligent plaintiff might have been, if his actions did not contribute to or were not a material element in the happening of the accident here involved, the defense of contributory negligence is not effective as against him.

" 'The principles which determine whether the causal relation between the plaintiff's conduct and his harm is such as to make the law regard it as a legally contributing cause and, therefore, * * * sufficient to make his failure to exercise reasonable care for his own protection contributory negligence barring him from recovery against a negligent defendant, are the same as those which determine whether the conduct of the actor as defendant is sufficient to make him responsible and, therefore, liable for a harm to another. Consequently, * * * the plaintiff's conduct must be a substantial factor operating with the defendant's negligence in bringing about the plaintiff's harm * * *.' Am. Law Inst. Restatement, Torts (Tent. Draft No. 10), comment to § 3, p. 11."

On the second appeal in that case, 197 Minn. 635, 636, 268 N. W. 418, 419, we said that "as the record now appears we are of the

opinion that whether plaintiff's negligence, if any, had any causal connection with the collision was properly a question for the jury." Hence it seems clear that this court has definitely determined that there must be "causal connection" between plaintiff's acts or failure to act and the resulting injury.

We have perhaps devoted too much time and space to this particular issue, but have felt impelled so to do because this is the issue as to which both defendants have directed their heavy artillery.

■ It is claimed in Roberg's behalf that the verdict is excessive. Plaintiff is a talented young lady of 27 years. In this accident she suffered numerous cuts and painful bruises. She was stunned and rendered practically helpless, and had to be picked up and carried to a truck arriving at the scene soon after the accident. Upon it she was placed and taken to the hospital of Dr. Thomas Moe at Moose Lake, who immediately took her case in hand. He described her condition as follows:

"Well, she was in considerable pain and shock immediately following the accident, pain in the chest and back, and she was handled very carefully from the start, because of pain and suspicion of fractures, and a fracture of the spine was confirmed by X-ray. She remained in the hospital about 13 days, and about the first week she was in considerable pain and by the use of narcotics toward the last she felt somewhat better, and she sat up the last couple of days before she left for home."

The expenses incurred there were $144. She was then taken home but remained practically an invalid over a considerable period of time. In October she engaged the services of Dr. Tibbetts of Duluth, who has been treating her ever since and up to the time of trial. He describes her condition thus:

"My opinion is that she had a compression fracture of the fifth thoracic vertebra and a slight compression of the ninth and tenth thoracic vertebrae." He recommended the procurement and wearing of a brace, which he describes thus: "This particular brace is

composed of two steel uprights that extend from the bottom of her spine to a point between her shoulder blades, one of steel on either side of the vertebrae, and a band at the lower part going around the pelvis, and then straps going over the shoulders and around the waist to hold the support in position."

The doctor testified that it is customary to keep such brace in use from nine months to a year following the accident. He also expressed the opinion that it would not be safe for her to engage in her particular kind of endeavor until the brace was removed. (Dr. Moe thought that in about a year's time she would be fully recovered.) The cost of the brace was stated by the doctor to be $25, and that the services rendered by him in addition thereto would run between $75 and $125. That, however, did not include future professional attention, which, according to the doctor, would have to continue over a period of several months. At the time of trial she had lost a month and a half income from her profession, that of physical education instructor in the Duluth public schools. As such her work required special physical fitness for such activities as "tennis, basket ball, baseball; girls do not play football, but they get swimming, track, the dances of different types, such as folk, country, esthetic, acrobatic, golf, hockey; everything that is included in physical activities." Her work also included "skating, skiing, and hockey." She was thoroughly trained for the teaching of these activities. Her injuries brought about the necessity of wearing the described brace, which necessarily prevented her from taking these activities in hand. Her clothing was torn and her glasses broken at the time of the accident. She testified as to the value of these various items. It is safe to say that special damages alone, aside from loss of future earnings during that school year, exceed $500. Under these circumstances, we cannot say that the verdict, having the unqualified approval of the trial court, is excessive. To be noted also is the fact that defendant Doyle does not raise this issue in his assignment of errors. The following cases on this phase are helpful: Hillstrom v. Mannheimer Brothers, 146 Minn. 202, 206, 178 N. W. 881; Wells v. Weed, 197 Minn. 464, 267

N. W. 379; Findley v. Brittenham, 199 Minn. 197, 271 N. W. 449, 451.

█ Defendant Roberg assigns certain errors respecting the court's instructions to the jury. The important items are these: (1) That the court erred in reading to the jury the parking statute, 1 Mason Minn. St. 1927, § 2720-24; and (2) that the court likewise erred in reading to the jury the section relating to slow moving vehicles, *Id.* § 2720-9. His claim with respect to the first section is that if his car "was at a standstill, it was but a momentary stop caused by the blinding effect of the fog and the approaching truck lights." That is his story. On the other hand, there is evidence that "the accident did not happen immediately after passing that truck" and that its lights were not troublesome, yet Roberg had stopped his car on the pavement and it was there standing "nearer to the black line [center] than it was to the right-hand edge of the pavement. There was no showing on his part that the shoulder was not suitable or available to his use so that passing traffic thereby would be made less hazardous. It is contended that in Hartwell v. Progressive Transp. Co. Inc. 198 Minn. 488, 270 N. W. 570, 572, under like circumstances, we held that a truck was not "parked" or "left standing." However, counsel overlook the fact that in that case this particular section was read to the jury by the court. The statute we there said not applicable was L. 1933, c. 252 (3 Mason Minn. St. 1934 Supp. § 2720-54½), being what is generally referred to as the "flare" statute. The two sections of the statute obviously aim at different situations.

We think that the reading of § 2720-9 was proper. If Roberg were driving along slowly in the direction of traffic both cars were going but failed to drive "as closely as possible" to the right-hand edge of the pavement, then obviously the section became applicable.

In behalf of Doyle it is claimed that the court erred in reading to the jury § 2720-15, requiring that the driver of a motor vehicle following another shall not follow "more closely than is reasonable and prudent." This instruction would have been improper if the Roberg car had in fact stopped. But, according to Roberg's claim,

he was moving and had a lighted rear lamp. If his testimony were true, then clearly the statute mentioned had its application to such facts.

Another objection made by him is that the court erroneously instructed the jury respecting the duty of a driver overtaking another vehicle proceeding in the same direction. That section (2720-12) provides that the driver of a vehicle overtaking another going in the same direction "shall pass at a safe distance to the left thereof," obviously intending thereby to make a passing vehicle in duty bound to refrain from crowding or in any way interfering with the one who drives the car to be passed. Here, too, if the conditions were as claimed by Roberg, that he was proceeding forward and the taillight on his car was lighted, if Doyle had used ordinary care and had obeyed the particular section referred to, the impact would not have taken place.

Reading the entire charge as a whole, we are impressed with the fairness of it. We find in it nothing that can be said to be prejudicial, harmful, or misleading. Most jurors are car drivers. As such, they are, generally speaking, competent to determine fact issues pertinent to those here presented. We think they reached a correct result.

■ "Where the negligence of several combine to produce injuries to another, any or all of the authors of such negligent cause may be held to liability for the entire harmful result directly flowing therefrom." Findley v. Brittenham, 199 Minn. 197, 271 N. W. 449.

The entire record bespeaks an ably and carefully conducted trial by capable and experienced lawyers representing all the conflicting interests; and, above all else, under the guidance and direction of a fair-minded and thoroughly capable judge.

Each order is affirmed.

HOLT, JUSTICE (concurring).

I concur in all that is said in this decision, but I think in the case of Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649, cited with approval herein, the second paragraph of the syllabus is not accurate when it says there is no contributory negligence where the actions

of plaintiff "in no way contributed to, were a substantial factor in, or a material element to the happening of a collision with defendant's car which resulted in his injuries." It seems to me cases can be readily suggested where a plaintiff's negligence had no active part in producing an accident or collision between two vehicles but where such negligence nevertheless proximately contributed to cause his injury.