EMIL MALMGREN v. MIKE FOLDESI.[1]

May 8, 1942.

No. 33,081.

[1]Reported in 3 N. W. (2d) 669.

*Johnson, Sands & Brumfield,* for appellant.
*Farmer & Tighe,* for respondent.

HOLT, JUSTICE.

About two o'clock in the morning, August 10, 1940, plaintiff's decedent, Alvoid J. Malmgren, driving a Dodge car west on the trunk highway No. 60 at a point about eight miles east of St. James, was almost instantly killed when the Dodge collided with a loaded gasoline truck, being driven east on said highway by defendant's servant, his 25-year-old son Harold. In this action to recover damages for his death by defendant's wrongful act there was a verdict for plaintiff. Defendant's motion in the alternative for judgment notwithstanding the verdict or a new trial was denied, and he appeals.

Where the fatal accident took place there is a cement pavement 18 feet wide. For a mile or more both east and west from the place of accident, the highway is straight and the grade easy. It was a dark night. Some witnesses called it misty. Harold had driven from defendant's filling station at Belle Plaine, this state, to Rock Rapids, Iowa, where he arrived in the evening of August 9. The Mack truck he was driving was designed to transport oil and gasoline. It was there loaded with 3,600 gallons of gasoline. The truck empty weighed 14,428 pounds. Shortly after loading, Harold started to return to Belle Plaine, arriving at Windom about midnight, where he stopped for lunch, then drove east on trunk highway No. 60 through St. James. When almost

eight miles east of the latter place, he noticed the lights of another car approaching from the east. He testified that he had traveled from 45 to 50 miles an hour until, as he neared the approaching car, the grade rose somewhat and the truck slowed down to 40 or 45 miles an hour, as decedent's car, with dazzling lights, was within 150 feet from him; that he was on the south lane of the pavement and decedent appeared to be on the north lane; that as he came within about 25 feet of decedent's car it swung over the center line toward the truck, and he, Harold, swung the truck to his right, but instantly there was a collision, and the truck jackknifed into the ditch south of the pavement. The Dodge was thrown on its left side in the north ditch, facing east. At the moment of the collision there was no vehicle approaching from either direction. Harold found himself pitched out of the truck. He states that he was momentarily stunned, but got a flashlight, went over to the Dodge, and noticed Malmgren, outside the car. Life had not entirely left the body, and Harold started for help. When he returned Malmgren was dead.

In a short time the sheriff, the coroner, two highway patrolmen, and others came and viewed the situation. These were witnesses at the trial. Flares were set out to warn other travelers. Debris from the collision was removed from the south half of the pavement and traffic directed thereon. The testimony is that most of the glass and loose wreckage was north of the center line. The left front wheel was sheared off each vehicle. The evidence is somewhat uncertain as to where the sheared off wheels lay on the pavement before being removed. The most significant facts were oil spots or puddles on the north half of the pavement a foot to three feet north of the center line of the pavement. Photographs of these oil spots, taken August 16, were introduced in evidence.

The main contention in this appeal is that the testimony of the only living witness, Harold Foldesi, is such that it must be accepted as true under the rule announced in O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, and thereby is established

not only that the driver of defendant's truck was free from negligence, but that decedent was guilty, as a matter of law, of contributory negligence, so that defendant is entitled to judgment notwithstanding the verdict.

It was the duty of each of the drivers of these two meeting vehicles to keep his vehicle on his own lane of the pavement. This collision could not have occurred if each had done his duty. The evidence does not justify a finding that either vehicle skidded so that the collision was an unavoidable accident. While the testimony of Harold, the only living witness of the occurrence, was positive that he did not encroach on the north lane and that the decedent swerved onto the south lane of the pavement, the jury could not only find inconsistencies in his testimony, but there were circumstances of physical facts impeaching the verity of Harold's story. Numerous photographs taken six days after the collision tell their story. The jury were also informed by numerous witnesses as to where the debris and wreckage were found on the pavement after the impact. The evidence has been carefully considered and warrants the inference that the truck had encroached on the north half of the pavement when the impact with the Dodge took place. Most of the glass and debris of the wreckage were found on the north lane. Perhaps the most persuasive fact was that of the oil spots on the pavement and on the grass where the Dodge lay. The determination of which driver was on the wrong lane really settled both the issue of defendant's negligence and Malmgren's contributory negligence. We consider this was for the jury.

Error is assigned as to many portions of the court's charge, and the failure to give certain of defendant's requested instructions. The court's charge was a clear and fair presentation of the issues of fact and the applicable law. It embodies so much of defendant's requested instructions as was correct and applicable. The only instruction given which justifies any comment is this in respect to contributory negligence:

"If this Malmgren boy, who was operating that automobile at

the time and place in question, failed to exercise the care that an ordinary prudent person would exercise under the same or similar circumstances, he would then be guilty of negligence, and if that negligence contributed directly to the accident as a cause in a material degree he would then in law be guilty of contributory negligence and would not be entitled to recover, nor would his father who stands here."

In Carlson v. Naddy, 181 Minn. 180, 181, 232 N. W. 3, 4, this requested instruction was held properly refused: "Contributory negligence would be such negligence as contributed in the slightest degree to the injury." Cases were there referred to from which a correct instruction could be framed. In Restatement, Torts (Tent. Draft No. 10), comment to § 3, p. 11, is found this statement, among others, in respect to contributory negligence, "the plaintiff's conduct must be a substantial factor operating with the defendant's negligence in bringing about the plaintiff's harm." This quotation is mentioned with approval in Guile v. Greenberg, 192 Minn. 548, 551, 257 N. W. 649, 650, where the late Mr. Chief Justice Devaney said that the problem of the alleged contributory negligence was one of proximate cause:

"Regardless of how negligent plaintiff might have been, if his actions did not contribute to or were not a material element in the happening of the accident here involved, the defense of contributory negligence is not effective as against him."

In view of the law as expressed in our decision referred to, the giving of the challenged instruction does not warrant a new trial. See also Thorstad v. Doyle, 199 Minn. 543, 273 N. W. 255, where contributory negligence is thus defined in the first paragraph of the syllabus:

"Contributory negligence is a want of ordinary or reasonable care on the part of a person injured by the negligence of another directly contributing to the injury, as a proximate cause thereof, without which the injury would not have occurred."

The order is affirmed.