MARIE WEBER v. J. V. McCARTHY AND ANOTHER.
PIONEER AUTO CARRIERS, INC. v. McCARTHY BROTHERS COMPANY.[1]

January 2, 1943.

Nos. 33,218, 33,219.

[1]Reported in 7 N. W. (2d) 681.

*Wilson & Blethen* and *Arthur H. Ogle,* for appellants.
*Harold J. Carroll,* for respondents.

HILTON, JUSTICE.

Two actions in negligence, consolidated for trial, one for the wrongful death of Floyd Weber and the other for property damage, both arising out of an automobile collision. Defendants appeal from the judgments entered pursuant to the verdicts for plaintiffs.

Defendant J. V. McCarthy testified that he was at his Minneapolis office on the day before the accident and left Minneapolis about 3:00 p. m. that day and drove to Truman, Minnesota, arriving there about 6:00 p. m. He attended an annual business meeting and then went to a cafe with his friends and associates. He admits drinking one bourbon highball before leaving Truman about midnight, and that he had three bottles of liquor in his car originally. His friends claim that he was all right when he left, though they tried to persuade him to stay at Truman overnight. After going about 35 miles, he stopped along the highway. His reasons were that it was a blustery, windy night and that he was sleepy, yet he listened to the radio. After the nap he proceeded toward Minneapolis. The accident happened about four miles north of Le Sueur, Minnesota, on highway No. 169, sometime between 3:30 and 4:00 a. m. McCarthy was driving in a northerly

direction, and deceased was driving a large truck of the semi-trailer-type loaded with new automobiles in a southerly direction. The two vehicles collided at a point where there is a curve in the highway. The truck driver was killed in the accident. McCarthy was badly hurt. There is conflicting testimony whether there was the smell of liquor on his breath. Only one full bottle of liquor was found in his car after the collision.

The first assignment of error concerns the instruction to the jury in which the trial court read the traffic laws pertaining to speed. The court stated that it did not want the jury to understand that these laws applied to this case, but that the jury should have them in mind when considering the case. Defendants claim that this raised the issue whether the speed of McCarthy's car was negligent. They assert that the only evidence on the point is McCarthy's testimony that he was going 40 miles per hour as he approached the semi-trailer. Defendants contend that as a matter of law this speed was not excessive and that the issue should have been withdrawn from the jury. It is true that the jury must not be allowed to consider an issue where the evidence admits of only one reasonable inference. To this effect is the case of Sandberg v. G. N. Ry. Co. 175 Minn. 280, 220 N. W. 949, where it was held to be prejudicial error to state to the jury a claim of the plaintiff that the railroad neglected to give warning by whistle or bell. There, all the evidence indicated that the signal had been given. Here, the night of the accident was windy and wet; the hour was late; McCarthy was at least very tired; the accident happened on a curve. Driving 40 miles an hour under *some* circumstances and conditions creates a jury question on the issue of negligence. There were facts enough here to sustain the court's instruction on this issue.

In the course of its charge the court called the jury's attention to evidence of the existence of certain physical facts upon the highway after the accident, using these words:

"Evidence was presented here, as I told you, concerning the physical facts which existed there upon the highway. It is your duty

to take into consideration all the evidence presented in reference to and concerning these physical facts. Investigate it carefully and analyze it very closely and with care and caution determine just exactly what physical traces were there upon the highway that were established that would have value in aiding you in determining what actually did occur." And again: "You have a right to take into consideration all the evidence presented here concerning the physical facts that existed out there upon the highway and give them the most careful consideration and ascertain just exactly what the truth [was] concerning these physical facts. The law says that under some circumstances physical facts speak louder than words."

It is claimed that these instructions state the rule that in cases where oral testimony is manifestly contrary to the undisputed physical facts or to generally recognized scientific principles and laws of nature such testimony will be disregarded, and that in applying the rule to the present cases the court committed reversible error. 20 Am. Jur. p. 1033, § 1183. We do not so construe these instructions. The trial court does not say that defendants' evidence as to the physical facts was conclusively rebutted or that the jury was required to accept plaintiffs' testimony without regard to the credibility of the witnesses who gave it. Rather, the court informed the jury that they must consider what were the physical facts, leaving to them the credibility of the various witnesses. See Larson v. Swift & Co. 116 Minn. 509, 134 N. W. 122, and Karras v. G. N. Ry. Co. 167 Minn. 140, 208 N. W. 655, where the rule was correctly applied. Also, reading the full charge carefully, we think that the instructions as to physical facts were not so unduly emphasized as to be reversible error.

Another contention of defendants is that the failure to instruct the jury that it could not disregard the testimony of an unimpeached witness (McCarthy) unless there was reasonable ground for so doing was reversible error within the rule of O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430. We reaffirm the rule of that case, but in relation to the facts here these instructions

would not give a fair statement of the law. If there was no evidence whatsoever in the record to cast doubt on McCarthy's testimony, it probably would be error not to give such instructions. But here all the testimony on behalf of plaintiffs as to the tracks, debris, and other conditions on the highway after the accident went to impeaching the testimony of McCarthy. See Malmgren v. Foldesi, 212 Minn. 354, 3 N. W. (2d) 669, where the same issue was decided on similar facts.

Defendants also contend that the damages recovered in the wrongful death action are not justified by the evidence because of a lack of substantial evidence of pecuniary benefit to the beneficiaries. The elements to be considered in determining the pecuniary loss in a wrongful death action are stated in 2 Dunnell, Dig. & Supp. § 2617. Not all these elements must be considered. Here, the widow testified that she was 37 years old and that her husband was 40; that he left surviving him a 15-year-old daughter; that the family lived together and were dependent upon him; and that at the time of his death he was earning $45.46 per week. The deceased's employer testified that he was an honest, industrious, and sober man and that he would consider Weber reliable and dependable; that his accident record was perfect. The deceased had a life expectancy of 28.18 years at the time of his death. This is sufficient evidence to sustain the verdict of $9,541. If defendants wished to inquire further into those facts which may be considered he had the right to cross-examine.

Misconduct of plaintiffs' counsel is assigned as error and ground for new trial. Amongst other things counsel said to the jury:

"Floyd Weber had just as much right to live as any man whether he earned nothing or $45 a week or $6,000 and nobody had a right to kill him on the highway and cause such an accident and be burned alive even if he happened to earn only $45 a week and we say he is entitled to equal rights."

The sentence quoted is flagrantly prejudicial and called for action by the court on its own motion without exception. Timm v.

Schneider, 203 Minn. 1, 8, 279 N. W. 754, and Murphy v. Barlow Realty Co. 214 Minn. 64, 7 N. W. (2d) 684. It was not excepted to at the trial but was assigned as error for the first time in this court. But while misconduct is a separate ground for new trial and is not subject to the provisions in regard to assignment of errors in the motion for new trial, nevertheless where, as here, appellants in their motion for new trial assigned specifically their charges of misconduct, omitting the one under consideration, we cannot assume that it was presented to the trial court, and hence we cannot consider it here. Exceptions should be taken to misconduct of the character here complained of, either when it occurs or at the close of the offender's argument. The other charges of misconduct, while reprehensible and properly raised, we do not regard as sufficiently serious to require reversal.

Judgments affirmed.

LORING, JUSTICE (dissenting).

In its instructions to the jury the court read the statute relative to speed. I think this was error. There appears to be no indication in the evidence that the speed at which McCarthy was traveling contributed to the collision. There is no contention that he skidded or slid into the truck. Certainly, 40 miles an hour was not a hazardous speed under the conditions, and unless it resulted in some movement of the car that contributed to the collision it had no connection as cause with the accident. If, as plaintiffs claim, McCarthy was on the wrong side of the road, that was the cause of the accident; but if, on the other hand McCarthy told the truth and the truck was coming directly toward him at a point 50 feet from him, that was the cause of the accident, and he would have had no time to avoid being struck even if he were going at a lesser speed or was standing still. Prescott v. Swanson, 197 Minn. 325, 329, 267 N. W. 251.

I think it was reversible error to submit the question of speed to the jury.

JULIUS J. OLSON, JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice Loring.