ALLENE M. BEHNKEN v. VINCENT RICHARD SMOLNIK.[1]

December 28, 1951.

No. 35,530.

*F. J. O'Brien, R. V. Ehrick,* and *John Ott,* for appellant.
*A. H. Clemens* and *Holst, Erickson & Vogel,* for respondent.

MAGNEY, JUSTICE.

On January 2, 1950, about 12:30 or 1 p. m., William J. Behnken was driving his 1949 Studebaker south on U. S. highway No. 52. Defendant, Vincent Richard Smolnik, was driving his 1950 Buick north on said highway. At a point nine miles south of Cannon Falls the vehicles collided. Behnken was killed, and Smolnik was seriously injured. Plaintiff, as administratrix of Behnken's estate, brought suit against Smolnik, who counterclaimed. The jury returned a $10,000 verdict in favor of Smolnik on his counterclaim. The court denied plaintiff's motion for judgment notwithstanding the verdict or a new trial, and she appeals from the order.

[1]Reported in 50 N. W. (2d) 696.

U. S. highway No. 52 is paved with concrete, 20 feet wide, with shoulders 8 to 10 feet wide. For a considerable distance each way from the point of collision the highway is straight. It has a grade of about one percent rise to the south.

At the time of the accident it was raining and misty. The pavement was wet, but no ice had formed. Visibility was variously estimated at from 400 to 900 feet.

Smolnik was traveling from Rochester to Minneapolis. He was alone in his car. Behnken was returning to Rochester from Minneapolis. He was also alone. As Smolnik approached the point of collision, his speed was about 35 to 50 miles per hour and at the time of collision about 40 miles per hour. The speed of the Behnken car is not disclosed. Two cars approached Smolnik on their own (the west) side of the road. As the lead car was about to meet or pass him, Smolnik saw the other car, the Behnken car, "nosing out as if he was going to pass him," that is, pass the lead car. The lead car continued on its way. The two cars traveling south were about 35 to 40 feet apart. When Smolnik saw the car coming toward him, he "went for my brakes," as he put it, and tried to turn his wheels to the right. He testified:

"Well, I thought I pulled it to the right. Maybe I just didn't hardly pull it at all. Maybe I just had my brakes on, but I do remember going for my brakes."

He has no recollection of any slowing up of his car. He was then driving in the center of his own right-hand side of the road, and says that the collision occurred in that lane of traffic. Smolnik was knocked unconscious and remembers nothing more about the accident.

After the collision, both cars were on the west shoulder with their back ends down in the ditch. Both were facing generally east or a little northeast and almost parallel. They were from 10 to 25 feet apart at their front ends, the Studebaker being north of the Buick. The right front of the Buick was over the edge of the pavement 2 to 4 feet and the left corner 1½ or 2 feet. The Stude-

baker was about even with the west edge of the pavement slab. The rear wheels of both cars were locked. Debris was scattered on the pavement. Plaintiff's witnesses placed the debris on the west slab of the pavement and on the west shoulder, while witnesses for defendant placed the debris about the center of the highway, scattered equally on both sides of the center line. One of them testified that it covered an area 10 feet in diameter. There were no skid marks and no other marks of any kind from the tires, although the pavement was wet. The greatest damage to the Buick was at its left front. Its left front headlight was gone. The damage to the Studebaker indicated that its right front contacted the Buick.

There is but one question involved in the case, and that is whether the verdict is supported by the evidence.

Plaintiff says that defendant's version of the accident, the position of the cars after the accident, the absence of skid marks and tire marks, the location of the debris, and other facts brought out in the evidence demonstrate conclusively that the accident did not happen as claimed by defendant, but that the collision took place on the west half of the pavement in decedent's lane of travel. She says that the testimony of defendant himself, the only surviving eyewitness, as to how the accident happened is uncertain and contradictory. It must be taken as a fact that immediately prior to the collision defendant and decedent were approaching each other, each in his own proper lane of travel. Taking defendant's version as to the situation immediately prior to the collision, as we must, in view of the verdict, plaintiff's decedent was only a short distance away from him when defendant first saw him, and decedent was then turning over into defendant's lane of travel. The time that elapsed from defendant's first sight of decedent until the collision was a fraction of a second, assuming that decedent was traveling at the same rate of speed as defendant. Defendant may be entirely truthful when he says that he put his foot on the brake and tried to turn to the right. It is obvious that the time he had within which to do the things he says he intended or tried to do was less than a second. The reaction time must also be considered. It is diffi-

cult to see how anything he tried to do in that short period of time could have had any effect on the speed of his car or its direction. There is nothing which seems improbable or fantastic in defendant's story when he says that decedent's car was following a lead car by about 35 or 40 feet and that when defendant first saw decedent he was crossing over the center line into defendant's line of travel in order to pass the lead car. That is exactly how many accidents on the straightaway of our main traveled highways happen.

Plaintiff further claims that the position of the cars after they came to rest negatives the fact that the collision occurred in the east lane of travel, as claimed by defendant. She claims that, since the rear wheels of both cars were locked, they could not possibly have traveled "clear across the west lane to the west shoulder of the highway" under their own power; that if they skidded across they would have left tire marks on the pavement. She also claims that it is established by the evidence that the debris was in the west lane; therefore, that the collision must have occurred in the west lane.

It is just as difficult to show how the cars, had the collision taken place in the west lane, could have, with wheels locked, reached the place where they came to rest, with both of them facing toward the east, without leaving tire marks, as to show the same result if the collision had taken place in the east lane. It is a fair assumption, from the known facts, that the cars, from the force of the impact, bounced into the position in which they were found. From the information gained from our reading of the records of numerous cases involving automobile collisions, we know that such is not an unusual occurrence. Positions of cars after a violent impact cannot be predicted, as one cannot always know all of the many factors that influence the application of the laws of physics.

Plaintiff lays great stress upon the location of the debris, as clearly showing that the collision occurred in the west lane. There is a conflict in the evidence as to the location of the debris. Plaintiff's witnesses placed it in the west lane and defendant's in the center of the pavement, covering a space ten feet in diameter on

both sides of the center line. The testimony taken in the light most favorable to defendant, as we are required to do, places the debris in a position not inconsistent with defendant's version of the accident. It is to be remembered that the pavement is 20 feet wide. If each car was traveling in the middle of its own proper lane, there would have been only about four feet between them if they had continued on their way. To bring about the collision, decedent's car would not have had to move over more than about four feet to contact defendant's car. The resulting debris would naturally be on both sides of the center line, although its exact location would also be unpredictable.

The evidence indicates that the left front of defendant's car and the right front of the decedent's car came together. If the accident had taken place in the west lane, as plaintiff insists, it is impossible to figure out how the cars could have contacted in that manner, while this is readily understandable if decedent's car crossed the center line of the highway at an angle, as it must have done, if it crossed over at all.

As this case involves only a pure question of fact, there is no necessity to comment on the cases cited or to cite any other cases. In our opinion, the jury's determination on the facts presented was correct.

Order affirmed.