RUDOLPH LEWERENZ v. E. W. WYLIE COMPANY.[1]

February 21, 1952.

No. 35,634.

[1]Reported in 51 N. W. (2d) 834.

*Johanson, Winter & Lundquist,* for appellant.

*Gandrud & Olson* and *Streissguth, Berens & Rodenberg,* for respondent.

CHRISTIANSON, JUSTICE.

This is a wrongful-death action brought by the special administrator of the estate of Vernon A. Lewerenz to recover damages for his death resulting from a collision between decedent's car and an auto transport owned by defendant, E. W. Wylie Company, a corporation, and driven by its agent. The jury returned a verdict for plaintiff, and defendant appeals from an order denying its alternative motion for judgment or a new trial.

Shortly before midnight on June 11, 1950, William Hurlburt, a servant of defendant, was driving east on U. S. highway No. 12 about one-half mile east of Dassel, Minnesota. He was returning to Minneapolis in a motor transport composed of a tractor truck and a semitrailer capable of carrying four automobiles, after having delivered four automobiles at Groton, South Dakota. At the same time and place, decedent, Vernon A. Lewerenz, was traveling west in a 1937 Ford coach toward his home at Darwin, Minnesota. The Ford and the motor transport collided, and Lewerenz was fatally injured.

U. S. highway No. 12 is paved with concrete and is 20 feet wide at the scene of the accident. On the night of June 11, 1950, the highway was dry. The accident took place in a dip in the highway which is about one-half mile long and which rises in a 1.5 percent grade to the west and in a slightly lesser grade to the east.

Since there is no evidence that this was an unavoidable accident, it is obvious that one or both of the drivers failed to remain in his own lane, as was his duty. See, Malmgren v. Foldesi, 212 Minn. 354, 357, 3 N. W. (2d) 669, 670. Thus, at the trial each party attempted to prove that the other driver was on the wrong side of the highway. Since plaintiff's decedent is dead and the only other eyewitness was defendant's driver, plaintiff had to rely upon the inferences to be drawn from the physical facts as they existed shortly after the accident when two highway patrolmen, the sheriff of Meeker county, and his deputy came upon the scene.

The testimony of these four witnesses was substantially the same. The tractor and the Ford automobile rested on the south side of the highway. The Ford was facing west, half of it resting on the pavement and half on the shoulder. The tractor, facing southeast, was imbedded in the right side of the Ford at a 45-degree angle. The trailer was detached from the tractor and was pointed northeast on the north side of the highway about 69 feet northwest of the tractor and the Ford car. It rested partly on the highway and partly off, with its front end extending through a guardrail.

Fifty-six feet west of the trailer and 125 feet northwest of the tractor and the car there was a concentration of debris two feet, seven inches north of the center line. The debris consisted of shackle bolts and the radiator petcock from the Ford, broken glass, dust and dirt such as collects beneath the fenders of motor vehicles, springs from the tractor, and radiator solution. From the area of the debris, there were skid marks that led northeast across the north side of the center line to the rear dual wheels of the trailer. There was a difference of opinion as to whether the skid marks began at the concentration of debris 56 feet west of the trailer or a short distance west of the concentration of the debris. The

brakes on the trailer were set, but apparently the driver did not set them. Rather, they were automatically set when the trailer was severed from the tractor. There were no skid marks traceable to the Ford or the tractor other than those made by the latter when it was towed away.

After plaintiff's witnesses had testified to the foregoing physical facts, defendant called Hurlburt, the driver of the transport and the only eyewitness to the accident. Hurlburt testified that he was traveling on the south lane, which was his right lane, at a speed of 40 or 45 miles per hour shortly before the accident, and that he passed no cars going in his direction after he left Dassel and before the collision. He stated that three or four cars passed him traveling west when, at a distance of 40 or 45 feet, decedent's car turned left in a southwesterly direction from the north lane into the south lane and thus directly into the path of the transport. Hurlburt testified that in an attempt to avoid running directly into the right side of decedent's car, he turned left in a northeasterly direction onto the left side of the road, but only the left front wheel of his tractor had crossed the center line when the right front of the tractor struck the right side of the Ford coach at the door. He said that the momentum of the Ford traveling southwest twisted the tractor sharply to the right, so that the tractor, which was headed northeast prior to the collision, was headed southeast at a 45-degree angle thereafter. When the tractor changed directions so sharply, the trailer snapped off and proceeded in a northeasterly direction.

Hurlburt agreed with plaintiff's witnesses as to the position of the vehicles after the accident and as to the existence of the skid marks, though he had not measured their length. He said that the debris was concentrated in the center of the road, thus disagreeing with earlier testimony placing it north of the center line. He also testified that the radiator of the Ford was found south of the center line about five to ten feet west of the point of impact.

Sheriff Eldon L. Hardy was recalled on rebuttal. He testified that the radiator of the Ford was found on the south lane approxi-

mately 50 feet east of the debris; and furthermore, that when he asked Hurlburt at the scene of the accident that night to tell him what happened, Hurlburt answered that he did not know. Plaintiff also called Miss Arlene Ortquist, who testified that while traveling east in an automobile at a speed of 35 or 40 miles per hour on U. S. highway No. 12 a little east of Dassel the transport which Hurlburt was driving passed the automobile in which she was a passenger. She stated that the transport disappeared over a hill in front of the auto in which she was traveling and that no vehicles approached from the east between the time the transport passed her and the time she came upon the scene of the accident.

■ Defendant contends that the physical facts, combined with Hurlburt's testimony, establish decedent's contributory negligence as a matter of law. With this contention we cannot agree.

Taking the facts, as we must, in the light most favorable to the verdict for plaintiff, the physical facts as presented by plaintiff's witnesses supported the inference that decedent was traveling west on his own (north) side of the highway when the transport, driven by Hurlburt, approached from the opposite direction on the same side of the road. A jury might infer that decedent turned southwest to avoid the collision, and that Hurlburt, seeing his error, turned southeast to get on his own (south) side of the road. It might be inferred that the heavy transport struck the right side of the Ford on the north side of the highway at a 45-degree angle, pushing it 125 feet to the southeast, while the trailer, detached from the tractor by the latter's sharp change of direction, proceeded northeast.

Though the physical facts support an inference that the collision occurred in a manner consistent with a verdict for plaintiff, Hurlburt's testimony pictures the collision as occurring in a manner consistent with a verdict for defendant, and his testimony does not conflict with the physical facts. Thus, at first blush the facts here may appear to come within the rule that a jury cannot be allowed to speculate where the evidence presents two or more theories or possibilities as to the manner in which an accident occurred, on

one of which the defendant is liable but on the other not. Schendel v. C. M. & St. P. Ry. Co. 165 Minn. 223, 231, 206 N. W. 436, 439; Orth v. St. P. M. & M. Ry. Co. 47 Minn. 384, 389, 50 N. W. 363, 365. However, the physical facts were not ambiguous when plaintiff rested his case in chief. They became ambiguous only after Hurlburt had given his version of how the collision occurred. The jury was free to believe or disbelieve Hurlburt's version of the accident. His testimony was not, as defendant contends, wholly uncontradicted or unimpugned. The rebuttal testimony given by Arlene Ortquist that Hurlburt passed her east of Dassel and that there were no cars approaching from the east shortly before the accident directly and materially contradicted Hurlburt's testimony. Also, Sheriff Hardy testified that shortly after the accident Hurlburt told him he did not know how the accident occurred. The foregoing rebuttal testimony did not require the jury to disbelieve Hurlburt's account of how the collision occurred. However, it did furnish a justifiable basis for the jury to reject his version. If Hurlburt's story was disbelieved, then the reasonable inferences from the physical facts remained unopposed in decedent's favor. Since the record failed conclusively to establish that the collision occurred in the manner Hurlburt claimed, jury questions were presented on the issues of negligence and contributory negligence. The inferences to be drawn from the physical facts, together with the credibility of Hurlburt's testimony, clearly made both issues questions of fact for the jury. Cf. Behnken v. Smolnik, 235 Minn. 315, 50 N. W. (2d) 696; Weber v. McCarthy, 214 Minn. 76, 7 N. W. (2d) 681; Malmgren v. Foldesi, 212 Minn. 354, 3 N. W. (2d) 669.

■ At the commencement of the action, defendant counterclaimed for damage to its transport. Plaintiff moved to strike the counterclaim on the ground that he represented beneficiaries expressly named in the wrongful-death statute, M. S. A. 1949, § 573.02, whereas the counterclaim was directed against decedent's estate, which was not a party to the action. The trial court granted the motion. Defendant assigns the striking of its counterclaim as error.

There is a split of authority among the few jurisdictions which have considered the question whether a defendant may properly counterclaim in a wrongful-death action.[2] However, since a change in our wrongful-death statute[3] after this cause of action arose would make a holding here of doubtful value as precedent, and since a decision is not necessary in disposing of the issue here, we need not decide whether the counterclaim was permissible in this wrongful-death action.

In this case, defendant was allowed to present all its evidence relating to the negligence or lack thereof on the part of both drivers. If the counterclaim had not been stricken, the only additional evidence that could have been presented to the jury would have related to the amount of property damage to the transport. In view of the verdict for plaintiff on the issue of liability, which could not have been more fully litigated under the counterclaim, defendant was not prejudiced by its being stricken. Cf. McConn v. Lyell, 204 Minn. 198, 283 N. W. 112. Therefore, the question whether the striking of the counterclaim was erroneous need not be decided, since, in any event, it was not prejudicial.

■ Defendant contends that it was prejudiced by a rebuke administered to one of its counsel by the trial court. In arguing plaintiff's motion to strike the counterclaim, defendant's counsel requested an opportunity to check the authorities on the subject. The court replied within hearing of the prospective jurors:

"Well, I think that you should come into court prepared."

This court has recently condemned any comments on the part of a trial judge which might prejudice the rights of one of the litigants. Hansen v. St. Paul City Ry. Co. 231 Minn. 354, 43 N. W. (2d) 260. But here we need neither condemn nor condone the trial court's remarks. The comment was made before the jury was im-

---

[2]These cases are discussed in Annotation, 6 A. L. R. (2d) 256.

[3]L. 1951, c. 697, § 1, amended M. S. A. 1949, § 573.02, and provides that such actions shall be brought by a trustee appointed by the district court rather than the personal representative of the decedent.

paneled and sworn. Moreover, the remark was directed to one of the members of the law firm retained by defendant, whereas the following day, and thereafter until the conclusion of the trial, defendant was represented by the senior member of the firm. Thus, if there was any prejudice, the person against whom it was directed did not appear during the major portion of the trial. For the foregoing reason, it is our opinion that defendant's cause could not have been harmed by the trial court's remarks.

■ Defendant urges that the trial court erred in refusing to give two requested instructions. The first request was that the jury be instructed that the parents of an unemancipated minor may legally collect his wages. The second request was to the effect that after a child has attained his majority his parents are not entitled to his wages. Without questioning the correctness of these instructions as abstract principles of law, their refusal was not error.

The first instruction was inapplicable and properly refused, since decedent was 22 years of age at the time of his death. The second instruction was properly refused, since the trial court's instructions as given conveyed to the jury a clear and correct understanding of the measure of damages to be applied. Furthermore, the fact that decedent, an unmarried man, was under no legal obligation to make financial contributions to his parents would not preclude the making of such contributions by him and the resulting loss of that income by reason of his death. Thoirs v. Pounsford, 210 Minn. 462, 299 N. W. 16. Thus, there was no error in the refusal to give defendant's requested instructions.

Affirmed.