**Ali HAGHIGHI d/b/a International Radio Network, Plaintiff,**

v.

**RUSSIAN–AMERICAN BROADCASTING CO., Defendant.**

No. C6–97–1842.

Supreme Court of Minnesota.

May 7, 1998.

Kathleen A. Marron, Thomas C. Mahlum, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, for plaintiff.

J. Michael Dady, Robert A. Gust, Dady & Garner, P.A., Minneapolis, for defendant.

## OPINION

**BLATZ, Chief Justice.**

This case comes to us on an Order of Certification issued by the United States Court of Appeals for the Eighth Circuit under the Uniform Certification of Questions of Law Act.[1] The certified question asks:

> Whether a hand written document prepared by the parties' attorneys at the conclusion of a mediation session conducted pursuant to the Minnesota Civil Mediation Act and signed contemporaneously on each page by the respective parties attending the mediation session but which does not itself provide that the document is to be a binding agreement, is rendered unenforceable as a mediated settlement agreement by virtue of Minn.Stat. § 572.35, subd. 1?

We answer the question in the affirmative.

Defendant Ethnic–American Broadcasting Company, L.P., f/k/a Russian–American Broadcasting Company, L.P. (RABC), provides ethnic programming, including Russian language radio and cable programming. Plaintiff Ali Haghighi, d/b/a International Radio Network (IRN), distributes foreign language radio programming on a subscriber basis. On March 23, 1993, RABC and IRN entered into a contract whereby RABC allowed IRN to rebroadcast its Russian language radio programming over IRN's subcarrier signal to subscribers in the Minneapolis/St. Paul area. Shortly thereafter, the contractual relationship between the parties began to deteriorate, and in July 1995, IRN initiated a breach of contract action against RABC. RABC filed an answer denying that it had breached the contract and a counterclaim seeking recovery of overdue payments that RABC alleged were owed by IRN under the contract. The parties agreed to mediate their dispute.

Before the mediation session, both parties signed a Mediation Agreement. Among other provisions, the Mediation Agreement fully incorporates the language of Minn.Stat. § 572.35, subd 1 (1996).[2] The Mediation Agreement states in pertinent part:

> *Minnesota Civil Mediation Act.* Pursuant to the requirements of the Minnesota Civil Mediation Act, the mediator hereby advises the parties that: (a) the mediator has no duty to protect the parties' interests or provide them with information about their legal rights; (b) signing a mediated settlement agreement may adversely affect the parties' legal rights; (c) the parties should consult an attorney before signing a mediated settlement agreement if they are uncertain of their rights; and (d) a written mediated settlement agreement is not binding unless it contains a provision that it is binding and a provision stating substantially that the parties were advised in writing of (a) through (c) above.

The mediation session took place on February 14, 1996, and lasted the entire day. RABC was represented by Russell Moro, its Chief of Staff, who had the authority to bind RABC. IRN was represented by its owner, Ali Haghighi. Both parties' attorneys were present as well—Kirk Reilly on behalf of RABC, and Robert Gust on behalf of IRN. The mediation was a typical shuttle format, with both parties in separate rooms while the mediator went back and forth between them, attempting to find common ground. After four or five hours of negotiation, the mediator brought the parties together and recited terms which he believed the parties agreed upon. Both the mediator and RABC's attorney, Kirk Reilly, suggested that the parties write the terms down before Moro left town.

Because Moro had a plane to catch, the parties did not type up a formal document. Instead, Reilly and Gust drafted a handwritten document together, with Reilly drafting the majority of the document. The finished

---

**1.** Minnesota Statutes section 480.061 (1996).

**2.** Minnesota Statutes section 572.35, subd. 1 provides that:

A mediated settlement agreement is not binding unless it contains a provision stating that it is binding and a provision stating substantially that the parties were advised in writing that (a) the mediator has no duty to protect their interests or provide them with information about their legal rights; (b) signing a mediated settlement agreement may adversely affect their legal rights; and (c) they should consult an attorney before signing a mediated settlement agreement if they are uncertain of their rights.

product contained fourteen terms and consisted of three pages. Both attorneys reviewed the document and initialed each of the terms and revisions. Moro and Haghighi then signed each page. The document did not contain a provision stating that it was binding, as required by both the Mediation Agreement and the Minnesota Civil Mediation Act.

On August 28, 1996, IRN filed a summary judgment motion to declare the handwritten document enforceable as a settlement agreement. The district court treated IRN's motion as a motion to enforce a settlement agreement and scheduled an evidentiary hearing pursuant to *Sheng v. Starkey Lab., Inc.*[3] Before the evidentiary hearing, the district court requested that the parties submit supplemental briefs addressing the impact of the Minnesota Civil Mediation Act, Minn. Stat. § 572.35, subd. 1, on the enforceability of any settlement agreement. On November 8, 1996, the district court issued an order stating that, although on its face Minn.Stat. § 572.35, subd. 1 appears to preclude enforcement of the handwritten document, the court did not believe that the legislature intended such a result in mediations "where both parties are represented by counsel and are fully aware of the binding effect of a settlement agreement." Accordingly, the district court concluded that Minn.Stat. § 572.35, subd. 1 did not bar enforcement of the handwritten document.

After holding an evidentiary hearing to determine whether the parties intended the handwritten document to represent a binding settlement agreement, the district court found that the objective words and conduct of the parties both during and after the mediation session demonstrated that both parties intended to be bound by the handwritten document and that the document represented a final and complete settlement of the case and an agreement as to all essential terms. Therefore, the district court concluded that IRN met its burden of proving that a settlement agreement existed and granted IRN's motion to enforce the handwritten document. RABC appealed, and the United States Court of Appeals for the Eighth Circuit certified to this court the question of whether Minn.Stat. § 572.35, subd. 1 renders the handwritten document unenforceable.

■ "A certified question is a matter of law and this court is free to independently review it on appeal."[4] As a threshold issue, the certified question requires this court to assume the handwritten document was prepared at the conclusion of a mediation session conducted pursuant to the Minnesota Civil Mediation Act. Given these facts, we conclude that the handwritten document is rendered unenforceable by the plain language of Minn.Stat. § 572.35, subd. 1.

■ Canons of statutory interpretation provide that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."[5] In accordance with this principle, this court has consistently stated that when a statute is free from ambiguity, we will not look beyond the express language of the statute.[6]

There is no ambiguous language in the provision at hand. The statute clearly provides that a mediated settlement agreement will not be enforceable unless it contains a provision stating that it is binding. The handwritten document prepared by the parties did not contain such a provision. Given a strict, plain language reading, the statute precludes enforcement of the document.

---

**3.** 53 F.3d 192, 194 (8th Cir.1995) (requiring that an evidentiary hearing be held when there is a substantial dispute concerning the existence or terms of a settlement agreement).

**4.** *In re Butler*, 552 N.W.2d 226, 229 (Minn.1996).

**5.** Minn.Stat. § 645.16 (1996).

**6.** *Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn.1997); *State v. Gorman*, 546 N.W.2d 5, 8 (Minn.1996); *Olson v.Olson*, 534 N.W.2d 547, 550 (Minn.1995); *Waller v. Powers Dept. Store*, 343 N.W.2d 655, 657 (Minn.1984); *Feick v. State Farm Mut. Auto. Ins. Co.*, 307 N.W.2d 772, 775 (Minn.1981).

However, IRN contends that such a reading would accomplish an absurd result in this case. When the literal meaning of the words of a statute produces an absurd result, we have recognized our obligation to look beyond the statutory language to other indicia of legislative intent.[7] IRN argues that the legislature clearly intended to protect parties who are unrepresented at mediation and who might not be aware of the legal consequences of the proceedings. Thus, IRN argues that when parties are represented at mediation by attorneys, there is no need for the requirement that the mediation settlement contain a provision stating that it is binding. We disagree. Requiring that a settlement agreement contain a provision stating that it is binding, even when both parties are represented by attorneys, does not produce an absurd result. While IRN contends that the legislature intended this statute to protect only unrepresented parties, it is just as likely that the legislature intended that a settlement document state that it is binding in order to encourage parties to participate fully in a mediation session without the concern that anything written down could later be used against them. If the literal language of this statute yields an unintended result, it is up to the legislature to correct it. This court "will not supply that which the legislature purposefully omits or inadvertently overlooks."[8]

The plain language of the Minnesota Civil Mediation Act requires that a mediated settlement agreement prepared at the conclusion of a mediation session conducted under this Act contain a provision stating that the settlement agreement is binding. Because the handwritten document does not contain such a provision, it is, therefore, unenforceable.

---

Certified question answered in the affirmative.

GILBERT, J., took no part in the consideration or decision of this matter.

**7.** *See Wegener v. Comm'r of Revenue,* 505 N.W.2d 612, 617 (Minn.1993).

**8.** *Green Giant Co. v. Comm'r of Revenue,* 534 N.W.2d 710, 712 (Minn.1995).