**Alice Ann STAAB, Appellant,**

v.

**DIOCESE OF ST. CLOUD, Respondent.**

No. A09–1335.

Supreme Court of Minnesota.

April 18, 2012.

Kevin S. Carpenter, Carpenter Injury Law Office, St. Cloud, MN, H. Morrison Kershner, Pemberton, Sorlie, Rufer & Kershner, PLLP, Fergus Falls, MN, for appellant.

Dyan J. Ebert, Laura A. Moehrle, Quinlivan & Hughes, P.A., St. Cloud, MN, for respondent.

Richard J. Thomas, Bryon G. Ascheman, Corinne Ivanca, Burke & Thomas, PLLP, St. Paul, MN, for amicus curiae Minnesota Defense Lawyers Association.

## OPINION

DIETZEN, Justice.

This appeal requires us to interpret the meaning of Minn.Stat. § 604.02, subd. 1 (2010), to determine whether a defendant must pay an entire damages award when a special jury verdict attributes 50% of the negligence to the sole defendant and 50% of the negligence to a nonparty to the lawsuit. Appellant Staab brought suit against respondent Diocese of St. Cloud for injuries she sustained on premises it owned and operated. The district court ruled that Minn.Stat. § 604.02, subd. 1, does not apply in an action against only one defendant and ordered the defendant to pay the entire damages award. The court of appeals reversed, holding that under the plain language of section 604.02, subdivision 1, the defendant must pay only in proportion to the percentage of fault attributed to the defendant by the jury. We affirm the court of appeals under a different analysis and remand to the district court to enter judgment in favor of appellant consistent with this opinion.

According to the complaint, on April 9, 2005, appellant Alice Ann Staab and her husband, Richard Staab, attended a social event at the Holy Cross Parish School in Kimball, Minnesota. The school is owned and operated by respondent Diocese of St. Cloud's Holy Cross Parish. Appellant relies on a nonmotorized wheelchair for mobility. As appellant was leaving the school, Richard Staab pushed her wheelchair through an open doorway, and the wheelchair went over what has been described as an unmarked 5-inch drop-off. Appellant fell forward out of her wheelchair onto a cement sidewalk and was injured as a result of her fall.

After her fall, appellant brought an action against the Diocese, alleging that the Diocese failed to use reasonable care to protect her from an unreasonable risk of harm caused by the conditions at the school. Richard Staab was not named as a party to the lawsuit by the appellant or the respondent. The matter proceeded to a jury trial. Respondent requested and the district court approved a special verdict form that asked the jury to separately determine whether the Diocese was negligent when appellant was injured and, if so, whether the negligence of the Diocese directly caused appellant's injuries. Similarly, the jury was asked to determine whether Richard Staab was negligent when appellant was injured and, if so, whether the negligence of Richard Staab directly caused appellant's injuries. Finally, the special verdict form asked the jury to attribute to the Diocese and to Richard Staab a percentage of the negligence that directly caused appellant's injuries.

The jury found that the Diocese and Richard Staab each were negligent and that the negligence of each directly caused appellant's injuries. The jury attributed 50% of the negligence that directly caused appellant's injuries to the Diocese and 50% to Richard Staab. The jury awarded compensatory damages of $224,200.70: $50,000 for past pain, disability, disfigurement, embarrassment, and emotional distress; and $174,200.70 for past health care expenses.

The district court adopted the special verdict as its findings of fact, concluded that appellant was entitled to judgment against the Diocese in the amount of $224,200.70, and ordered entry of judgment for $224,200.70 plus costs and disbursements.

The Diocese moved for amended findings of fact, conclusions of law, and judgment, asking the district court to reduce the judgment against the Diocese to 50% of the damages award. The Diocese argued that Minn.Stat. § 604.02, subd. 1, limits the liability of the Diocese to the percentage of fault attributed to it by the jury. The district court denied the motion. The court concluded that because subdivision 1 addresses contributions to awards "[w]hen two or more persons are severally liable," it did not apply in this case because "[l]iability arises only where there is a judgment. In this case, Richard Staab was not a party in the lawsuit and therefore cannot be held liable." As a result, the district court held the Diocese responsible to pay all of the $224,200.70 award.

The Diocese appealed, and the court of appeals reversed. *Staab v. Diocese of St. Cloud,* 780 N.W.2d 392, 396 (Minn.App. 2010). The court observed that "the statute is not a model of clarity," but concluded that requiring the Diocese to pay 100% of the damages award "does not comport with the plain language" of subdivision 1. *Id.* According to the court, the Diocese and Richard Staab are each "persons" within the meaning of the statute, and "[u]nder the plain language of the statute, they are 'each' to 'contribute' to the damages 'award' 'in proportion to the percentage of fault attributable to each.'" *Id.* at 394.

Therefore, the court concluded that the Diocese is severally liable for 50% of the damages award. *Id.* We granted appellant's petition for further review.

## I.

■■■ This appeal presents the court with its first opportunity to interpret Minn.Stat. § 604.02, subd. 1, as amended by the Legislature in 2003. At issue in this appeal is whether the sole defendant, the Diocese of St. Cloud, although found by the jury to be only 50% at fault, must pay 100% of the $224,200.70 jury award because Staab elected not to join her husband as a defendant.[1] The outcome turns on whether Minn.Stat. § 604.02, subd. 1, is interpreted to require that a sole defendant in a lawsuit is liable for a nonparty's liability.

The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010); *Brayton v. Pawlenty,* 781 N.W.2d 357, 363 (Minn.2010). We give words and phrases in a statute their plain and ordinary meanings, and "technical words and phrases ... are construed according to [their] special meaning or their definition." Minn.Stat. § 645.08(1) (2010); *accord Amaral v. Saint Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). Further, we construe the statute to give effect to all its provisions. Minn.Stat. § 645.16.

■■■ Our first step in interpreting a statute is to examine the statutory language to determine whether the words of the law are clear and free from all ambiguity. *Id.* The words are not free from ambiguity if, as applied to the facts of the particular case, they are susceptible to

---

1. In Minnesota, the doctrine of interspousal immunity no longer presents a bar to an action in negligence between a husband and wife. *Beaudette v. Frana,* 285 Minn. 366, 173 N.W.2d 416 (1969) (abrogating interspousal immunity for actions in tort); *see also Barile v. Anderson,* 295 Minn. 152, 203 N.W.2d 366 (1972) (rejecting interspousal immunity as a defense to a negligence action brought by husband against wife).

more than one reasonable interpretation. *See Amaral,* 598 N.W.2d at 384. If the words are free of all ambiguity, we apply the statutory language. *See* Minn.Stat. § 645.16. If the words are not free of ambiguity, the court may look beyond the statutory language to ascertain the Legislature's intent. *Id.*

■ Generally, statutes in derogation of the common law are strictly construed. *Rosenberg v. Heritage Renovations, LLC,* 685 N.W.2d 320, 327 (Minn.2004). Therefore, we presume that statutes are consistent with the common law, *In re Shetsky,* 239 Minn. 463, 469, 60 N.W.2d 40, 45 (1953), and do not presume that the Legislature intends to abrogate or modify a common law rule except to the extent expressly declared or clearly indicated in the statute, *Do v. Am. Family Mut. Ins. Co.,* 779 N.W.2d 853, 858 (Minn.2010). It is undisputed that Minn.Stat. § 604.02 was intended to modify the common law rule of joint and several liability in Minnesota. Thus, we must carefully examine the express wording of the statute to determine the nature and extent to which the statute modifies the common law. *See id.*

## II.

Minnesota Statutes § 604.02, subd. 1, states:

> When two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that the following persons are jointly and severally liable for the whole award:
>
> (1) a person whose fault is greater than 50 percent;
>
> (2) two or more persons who act in a common scheme or plan that results in injury;
>
> (3) a person who commits an intentional tort; or

> (4) a person whose liability arises under [certain environmental laws].

The language of subdivision 1 presents two fundamental challenges that must be resolved in order to ascertain its meaning. First, subdivision 1 does not explain the meaning of "[w]hen," that is, the point in time the statute is applicable to determine whether "persons are severally liable." Specifically, subdivision 1 does not explain whether liability for purposes of the statute is determined at the time the tort is committed, at the time of judgment in a civil action, or at some other point in time. The answer to the question of when liability is determined for purposes of the statute directly impacts whether a sole defendant in a lawsuit must pay more than its equitable share of a judgment as measured by the percentage of fault apportioned to it by the jury. Thus, in order to interpret the statutory phrases "persons are severally liable" and "persons are jointly and severally liable," we must examine when "persons are ... liable" at common law and determine whether the statute modifies the common law rule.

■■ At common law, "liability is created at the instant [a] tort is committed." *White v. Johnson,* 272 Minn. 363, 371, 137 N.W.2d 674, 679 (1965), *overruled on other grounds by Tolbert v. Gerber Indus., Inc.,* 255 N.W.2d 362, 368 n. 11 (Minn.1977) (adopting comparative fault contribution). Under Minnesota common law, "persons are ... liable" at the instant those persons' acts cause injury to a victim. Applying the common law, a tortfeasor's liability *exists* prior to and independent of any claim or civil action that arises from that liability; hence, a judgment on a plaintiff's cause of action in tort in a civil action *enforces* that liability only against the defendant or defendants who are parties to

the civil action.[2] Moreover, the language of section 604.02 provides no clear indication that it modifies the common law rule regarding the time of creation of tort liability. Subdivision 1 therefore cannot be read to indicate that "persons are ... liable" as a result of the jury's apportionment of fault because those "persons" are *already* liable at the time the tort was committed.

Second, the statute does not define the phrases "severally liable" and "jointly and severally liable." Each phrase does, however, have a special meaning at common law. Pursuant to the canons of construction, words and phrases that have acquired a special meaning or definition are construed according to their special meaning or definition. Minn.Stat. § 645.08(1). Consequently, we must examine the meanings of "several liability" and "joint and several liability" in the common law and determine whether those phrases have acquired a special meaning or definition, and if so, interpret those phrases according to such special meaning or definition.

▮ Pursuant to Minnesota common law, "several liability" means "[l]iability that is separate and distinct from another's liability, so that the plaintiff may bring a separate action against one defendant without joining the other liable parties." *Black's Law Dictionary* 998 (9th ed.2009). Moreover, whether a person is "[an]other liable part[y]" for the purposes of several liability is a separate question from whether that person is joined as a defendant in a plaintiff's lawsuit. In contrast, "joint liability" is "[l]iability shared by two or more parties." *Black's Law Dictionary* 997 (9th ed.2009). Additionally, at common law, tortfeasors whose concurrent negligence produces a single, indivisible injury are jointly *and* severally liable to the person harmed. *Flaherty v. Northern Pac. Ry. Co.*, 39 Minn. 328, 329, 40 N.W. 160, 160–61 (1888) (adopting joint and several liability principles). Under the rule of joint and several liability, a plaintiff may bring an action to hold any or all of the jointly and severally liable tortfeasors liable for the entire harm. *See Thorstad v. Doyle*, 199 Minn. 543, 553, 273 N.W. 255, 260 (1937). A tortfeasor is "severally liable," however, when that person's liability is separate from another person's liability so that an injured person may bring an action against one defendant without joining the other liable person. Pursuant to the common law rules of joint and several liability and several liability, a plaintiff may sue fewer than all of the tortfeasors who caused the harm. But the difference between the two rules is that a "jointly and severally liable" defendant is responsible for the entire award, whereas a "severally liable" defendant is responsible for only his or her equitable share of the award.

▮ More importantly, the common law provides that "two or more persons are severally liable" at the instant multiple tortfeasors commit an act that causes a single, indivisible injury to a plaintiff.[3] *See Flaherty*, 39 Minn. at 329, 40 N.W. at 160–

---

**2.** Thus, the district court was incorrect to conclude that "[l]iability arises only where there is a judgment." Moreover, the court of appeals was incorrect to conclude that "both [tortfeasors] are 'severally liable' *because they were found* to share a portion of the fault." *Staab*, 780 N.W.2d at 394 (emphasis added). Rather, the common law liability of the Diocese and appellant's husband existed at the moment the tort was committed.

**3.** This is so because several liability is a component of joint and several liability. It is not logically possible for a tortfeasor to be jointly and severally liable without being severally liable, so several liability for an indivisible harm necessarily arises at the same instant as joint and several liability for that harm.

61 (adopting joint and several liability principles); *see also Spitzack v. Schumacher*, 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976) (stating that joint liability " 'is created at the instant the tort is committed' " (quoting *White*, 272 Minn. at 371, 137 N.W.2d at 679)); *Emp'rs Mut. Cas. Co. v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 235 Minn. 304, 309–10, 50 N.W.2d 689, 693 (1951) (stating that tortfeasors' common liability exists immediately after the acts which give rise to a cause of action against them).

▮ Section 604.02 does not express an intent to modify the common law meaning of "several liability" or "joint and several liability." Additionally, the statute does not express an intent to modify the common law rule that liability is created at the time a tort is committed.[4] Consequently, we conclude that the Legislature intended to adopt the special meaning those phrases acquired at common law. The plain meaning of subdivision 1 must be examined in light of the common law rules that a "severally liable" defendant is responsible for his or her equitable share of an award, and that "several liability" is determined at the time the tort is committed.

## A.

▮ Subdivision 1 contains three additional words or phrases that are important to understand its meaning. First, we examine the meaning of the word "persons." The plain and ordinary meaning of the word "persons" is very broad. *See Black's Law Dictionary* 1257 (9th ed.2009) (defin-

ing "person" as "[a] human being" or "[a]n entity ... that is recognized by law as having most of the rights and duties of a human being"); *see also American Heritage Dictionary* 1310 (4th ed.2006) (recognizing the legal definition of "person" as "[a] human or organization with legal rights and duties"). We discern no legislative intent to limit the word "persons" to the parties to the lawsuit. Had the Legislature intended to do so, it could have done so expressly. Further, a broad interpretation is consistent with the common law principle that several liability is examined at the time the tort is committed. Therefore, we interpret the word "persons" to mean not only "parties to the lawsuit," as urged by appellant and the dissent, but also to extend to the "parties to the transaction," as urged by respondent.

▮ Second, the next clause of subdivision 1 provides that "contributions to awards shall be in proportion to the percentage of fault attributable to each." Minn.Stat. § 604.02, subd. 1. We construe this clause to provide that the principle of several liability limits the magnitude of a severally liable person's contribution to an amount that is in proportion to his or her percentage of fault, as determined by the jury. *See* Restatement (Third) of Torts: Apportionment of Liability § 11 (2000) ("[An] injured person may recover only the severally liable person's comparative-responsibility share of the injured person's damages."). We do not read this clause to mandate contribution from a severally liable person who is not a party to the lawsuit.[5] Notably, the statute does not say,

---

**4.** The dissent correctly observes that cases stating and applying the rule regarding the time of creation of common (i.e., joint and several) liability involved disputes over contribution between jointly and severally liable tortfeasors. This observation has no bearing, however, on the validity of the rule that such liability arises at the time of commission of

the tort, or on our conclusion that section 604.02, subdivision 1, incorporates and relies upon that rule to determine "[w]hen two or more persons are severally liable."

**5.** It is settled that a judgment may not be enforced against persons who are not parties to an action. *See Hurr v. Davis*, 155 Minn.

"When two or more persons are severally liable, *each shall contribute* to the award in proportion to the percentage of fault attributable to each." Contrary to the dissent's assertion, the clause is not made ineffective if a severally liable person who is not a party to the lawsuit and not subject to an adverse judgment makes no contribution. The clause would be ineffective, however, if a severally liable person were compelled to contribute out of proportion to his or her percentage of fault.

 Third, a tortfeasor's *liability*—whether joint, several, or both—arises and exists independently of the tortfeasor's participation in a lawsuit and, therefore, is independent of the tortfeasor's obligation to contribute to any judgment entered in such a lawsuit. Accordingly, the third clause providing "except that the following persons are jointly and severally liable for the whole award" need not be read to imply that an award is enforceable against the persons identified in the enumerated exceptions. Instead, it stands for the unremarkable proposition that the limitation on the extent of contribution established by the second clause of subdivision 1 does not apply to anyone who falls within the enumerated exceptions (1)–(4). In other words, a person who falls within one of the exceptions is subject to the traditional joint and several liability rule. As a result, the definition of "persons" in subdivision 1 does not exclude parties to the transaction who are not parties to the lawsuit.[6]

Notably, subdivision 2, which provides for the reallocation of uncollectible judgments, states:

Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a *party's* equitable share of the obligation is uncollectible from that *party* and shall reallocate any uncollectible amount among the other *parties,* including a claimant at fault, according to their respective percentages of fault. A *party* whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2 (2010) (emphasis added). A "party" is "[o]ne who takes part in a transaction" or "[o]ne by or against whom a lawsuit is brought." *Black's Law Dictionary* 1231–32 (9th ed.2009). Previously we have determined that the word "party" in subdivision 2 includes all parties to the transaction giving rise to the cause of action. *Hosley v. Armstrong Cork Co.,* 383 N.W.2d 289, 293 (Minn.1986). Because "party" in subdivision 2 means all persons who are parties to the tort, regardless of whether they are named in the lawsuit, it logically follows that "persons" in subdivision 1 must also mean all parties to the tort.

The dissent's interpretation that "person" in subdivision 1 is limited to "parties to the lawsuit" creates a conflict with our decision in *Hosley.* It is illogical to conclude that "persons" in subdivision 1 has a

---

456, 459, 193 N.W. 943, 944 (1923). Because Minn.Stat. § 604.02, subd. 1, addresses the magnitude of contributions rather than the existence of a particular person's obligation to contribute, neither our interpretation of subdivision 1 nor the dissent's conflicts with this rule.

6. As the dissent correctly notes, a plaintiff cannot recover an entire award from a person whose fault is greater than 50% unless that

person is a party to the lawsuit. But the dissent is not correct to conclude that this fact renders the second clause of subdivision 1 ineffective unless "persons" is read to exclude "parties to the transaction" who are not also "parties to the lawsuit." Minnesota Statutes § 604.02, subd. 1, does not address whether a particular severally liable person is obligated to contribute to a judgment.

narrower meaning than "parties" in subdivision 2. It is more reasonable to conclude that persons and parties in subdivisions 1 and 2 would extend to all persons who are parties to the tort, regardless of whether they are parties to the lawsuit. *See* Minn. Stat. § 645.17(1) (2010). Moreover, our decision in *Hosley* clearly contemplates assignment of equitable shares of an obligation to nonparty tortfeasors, but we did not read the phrase "shall reallocate" to imply the creation of an obligation enforceable against nonparties where none would otherwise exist. Rather, we interpreted the statute to govern the extent of the equitable shares apportioned to each party to the transaction. *Hosley*, 383 N.W.2d at 293. We therefore conclude that section 604.02 applies whenever multiple tortfeasors act to cause an indivisible harm to a victim, regardless of how many of those tortfeasors are named as parties in a lawsuit arising from that tort.

We conclude that whether "two or more persons are severally liable" for purposes of section 604.02, subdivision 1, is determined at the time the tort was committed and not at the time of judgment in a civil action arising from the tort. The predicate to this interpretation is that the Legislature did not modify the common law rule that liability is created at the moment a tort is committed, and therefore the statute incorporates the common law rule. Moreover, "persons" and "parties" in the statute extends to all persons who are parties to the tort, regardless of whether they are parties to the lawsuit. Because the statute does not explicitly state that it applies at the time of judgment, this interpretation is reasonable, and the most logical.

### B.

Alternatively, it is possible to interpret the phrase "[w]hen two or more persons are severally liable" to mean that liability is determined at the time of the judgment. Essentially, this is the interpretation proposed by the dissent. The predicate to this proposed interpretation is that the Legislature modified the common law rule that several liability is created at the moment the tort is committed.

Because the statute is susceptible to more than one reasonable interpretation, it is ambiguous, and we must examine prior versions of the statute to ascertain legislative intent. *See* Minn.Stat. § 645.16. The legislative history that predates the 2003 amendments to section 604.02, subdivision 1, spans more than twenty years and provides an unbroken chain of legislative intent to limit joint and several liability in Minnesota. Specifically, after the 1978 amendments to chapter 604, parties against whom judgment had been entered no longer were jointly and severally liable for the entire judgment if another party's share of the judgment proved to be uncollectible. Act of Apr. 5, 1978, ch. 738, § 8, 1978 Minn. Laws 836, 840. Rather, under section 604.02, subdivision 2, the uncollectible share would be reallocated according to the "respective percentages of fault" attributed to each party. *Id.* After the 1986 and 1988 amendments, a person's fault generally had to exceed 15% and the fault of the state or of a municipality had to be at least 35%, in order for joint and several liability to apply. Act of Apr. 12, 1988, ch. 503, § 3, 1988 Minn. Laws 375, 378. We conclude the intent of the Legislature, ascertained through the history of section 604.02, was to limit joint and several liability in Minnesota. Not once has the Legislature sought to expand joint and several liability.

Notably, until the Legislature adopted the 2003 amendments, the statute provided that tortfeasors' "contributions to awards shall be in proportion to [their] percentage

of fault" but "each is jointly and severally liable for the whole award." *See* Act of May 19, 2003, ch. 71, § 1, 2003 Minn. Laws 386. The 2003 amendments eliminated the blanket exception that "each is jointly and severally liable for the whole award" and substituted four specific exceptions. *Id.;* Minn.Stat. § 604.02, subd. 1(1)–(4). In so doing, the Legislature explicitly limited the common law principle of joint and several liability to the four enumerated circumstances, thus enabling an injured person to recover more than a tortfeasor's comparative-responsibility share in only those four circumstances. Therefore, we conclude that the 2003 amendments to the statute clearly indicate the Legislature's intent to limit joint and several liability to the four circumstances enumerated in the exception clause, and to apply the rule of several liability in all other circumstances. In order to give effect to this intent, the statute must be interpreted to apply in all circumstances in which a person would otherwise be jointly and severally liable at common law, and a person is liable at common law at the moment the tort is committed, not as a result of a judgment. This interpretation is consistent with the common law and limits the application of joint and several liability to those circumstances that are explicitly specified in the statute.

The dissent correctly points out that joint and several liability survived within Minnesota's statutory comparative fault scheme at least through 1988. *See John-son v. Am. Family Mut. Ins. Co.,* 426 N.W.2d 419, 423 (Minn.1988) ("Minnesota law has retained the concept of joint and several liability, even while embracing a comparative negligence or comparative fault doctrine.") But this observation is incomplete. Specifically, Minnesota *retained* the doctrine of joint and several liability, but it also *limited the application* of the doctrine under the statutory comparative negligence scheme. Thus, the

mere retention of joint and several liability in limited form prior to the 2003 amendments does not inform the analysis of the extent to which the 2003 amendments further limited the doctrine.

Moreover, the dissent suggests that it is fair to apply common law joint and several liability and deny application of Minn.Stat. § 604.02 because the Diocese could have brought appellant's husband into the action as a third-party defendant. It relies on *Imlay v. City of Lake Crystal,* 453 N.W.2d 326 (Minn.1990), and *Schneider v. Buckman,* 433 N.W.2d 98 (Minn.1988), to support this argument. Both cases are readily distinguishable. In *Imlay,* two plaintiffs sued a single defendant, and the defendant brought in a third-party defendant; the jury found the original defendant 20% at fault and the third-party defendant 80% at fault. 453 N.W.2d at 328. In a footnote, we "question[ed] the applicability of joint and several liability under these pleadings because the [plaintiffs] did not sue [the joint tortfeasor]; rather his estate was brought in by [the defendant] as a third-party defendant." *Id.* at 330 n. 3. The footnote, however, does not support the conclusion that the doctrine of joint and several liability is inapplicable to cases involving a single defendant, as claimed by the dissent. Instead, the doctrine of joint and several liability applies under the circumstances in *Imlay* because joint and several liability arises at the time the tortfeasors commit the tort. Whether particular liable persons are joined to a lawsuit—and by which party—is irrelevant to the question of whether the doctrine of joint and several liability applies.

*Schneider* also does not support the dissent's argument. At issue was a version of Minn.Stat. § 604.02 that predated the 2003 amendments. Subdivision 1 provided that "[w]hen two or more persons are jointly liable, contributions to awards shall·be in

proportion to the percentage of fault attributable to each, *except that each is jointly and severally liable for the whole award.*" Minn.Stat. § 604.02, subd. 1 (2002) (emphasis added). Thus, when only one liable person was joined to the suit, that person was liable "for the whole award" under the pre–2003 version of the "except" clause of subdivision 1 and therefore could not use the reallocation provision of subdivision 2 to escape payment of other liable persons' equitable shares of the award. Put differently, in the version of the statute in effect at the time *Schneider* was decided, the "except" clause encompassed *all* liable persons, and therefore encompassed the defendant. Therefore, subdivision 1 did not limit the defendant's contribution to an amount "in proportion to [his] percentage of fault," but rather left him liable "for the whole award." Turning to the facts in *Schneider*, fault was apportioned among four persons: two of those were not parties to the lawsuit, and a third was dismissed under the doctrine of re-

spondeat superior. 433 N.W.2d at 99. As a result, the sole remaining defendant was, under the plain language of subdivision 1 as it existed at the time, "jointly and severally liable for the whole award," and the jury's allocation of fault to persons not parties to the lawsuit was of no practical consequence.[7] *Id.* at 103. Thus, Schneider recovered 100% of his damages from the sole defendant as a result of the defendant's joint and several liability for the whole award under the pre–2003 version of subdivision 1.[8]

Finally, the dissent's proposed interpretation that "persons" means named parties to the lawsuit is flawed and will lead to unreasonable results in the application of the exceptions in the statute. *See* Minn. Stat. § 645.17(1) (2010). For example, the interpretation of "persons" as "parties to the lawsuit" will destroy the subdivision 1(2) exception that retains joint and several liability for "two or more persons who act in a common scheme or plan that results in injury."[9]

7. The dissent relies on *Schneider* to support its argument that section 604.02, subdivision 1, does not apply in a case with a single defendant. Specifically, the dissent contends that *Schneider* "held that the defendant was liable for the entire award *because* 'there are no other defendants against whom judgment can be entered.'" (Emphasis added.) But *Schneider* did not address the interpretation or application of subdivision 1. Rather, we held that reallocation under subdivision 2 is not possible when the sole defendant is 100% liable and there are no other persons subject to the judgment between whom uncollectible amounts can be reallocated. *See also Hurr v. Davis*, 155 Minn. 456, 458–59, 193 N.W. 943, 944 (1923) (holding that judgment entered against persons who are not parties to an action is "extrajudicial and void"). The application of subdivision 2 to this case is not before us, however, and therefore we do not reach it.

8. Put differently, the defendant was required to pay 100% of Schneider's damages because he was jointly and severally liable for the

entire award under the common law rule as applied through subdivision 1; here, the Diocese is *not* required to pay 100% of Staab's damages because it is *not* jointly and severally liable for the entire award under subdivision 1. Neither the holding in *Schneider* nor our holding in this case relies upon the reallocation procedures of subdivision 2, and our holding in this case in no way alters our previous decisions regarding subdivision 2.

9. Consider, for instance, a scenario in which a plaintiff, P, is injured on the negligently-maintained premises of a bar owner, A, as a result of the negligent conduct of customers B and C. P sues A, and A brings a third-party claim against B. During the trial, A discovers and presents evidence that B had acted in a common scheme with nonparty tortfeasor C. The judge properly submits the fault of P, A, B, and nonparty C to the jury, which returns a special verdict determining that B and C "act[ed] in a common scheme or plan that result[ed] in injury" to P, and apportioning no fault to P, 15% of the fault to A, 45% of the fault to B, and 40% of the fault to C.

### III.

We hold that "persons" includes all "parties to the transaction," and therefore section 604.02, subdivision 1, applies when a jury apportions fault between a sole defendant and a nonparty tortfeasor, and limits the amount collectible from the defendant to its percentage share of the fault assigned to it by the jury. Consequently, the Diocese must pay to Staab 50% of the jury award, which corresponds to the Diocese's share of the fault as determined by the jury. Accordingly, we affirm the court of appeals as modified and remand to the district court for entry of judgment consistent with this opinion.

Affirmed and remanded.

MEYER, Justice (dissenting).

I respectfully dissent. Following the 2003 amendments, Minn.Stat. § 604.02, subd. 1 (2010), provides that "[w]hen two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each." The majority concludes that because the jury found the sole defendant 50% at fault for the plaintiff's injury, the

defendant is liable for only 50% of the jury award, which leaves the innocent plaintiff uncompensated for half of her damages. To reach this result, the majority abandons the common law and adopts an illogical construction in which the term "persons" has different meanings in different provisions of the same statute. Reading the statute as a whole, which we must, I conclude that the several liability provision in Minn.Stat. § 604.02, subd. 1, is not triggered when there is only one party liable for the award.

### A.

The issue in this appeal concerns how much of the $224,200.70 jury award Alice Ann Staab can recover from the Diocese of St. Cloud, the only defendant in this case. Resolving this issue involves the interpretation of Minn.Stat. § 604.02, subd. 1. Our goal in statutory interpretation is to ascertain and effectuate the intent of the Legislature. *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695*, 662 N.W.2d 139, 143 (Minn.2003).

Section 604.02 modifies the common law rule of joint and several liability in Minne-

---

Under our interpretation of subdivision 1: A is severally but not jointly liable and required to contribute 15% of the award, in proportion to its percentage of fault; B and C—as persons who had "act[ed] in a common scheme or plan that result[ed] in injury"—are "jointly and severally liable for the whole award." Because C is a nonparty not subject to the judgment, C cannot be required to contribute anything and B is required to contribute at least the remaining 85%.

The dissent's interpretation, however, will create confusion and inconsistent results. Initially, it is unclear how the dissent would deal with nonparty C's fault in this scenario. Specifically, under the dissent's interpretation, subdivision 1 would apply, but it is not clear whether it would require A and B to pay, respectively, 15% and 45% of the award, thus leaving C's 40% unpaid, or if it would instead divide nonparty C's share between them based upon their relative fault, such that

A would pay 25% and B would pay 75%. But it is the dissent's failure to deal with the application of subdivision 1(2) that is the most troubling. Specifically, the dissent's interpretation that "persons" means named parties to the lawsuit results in the conclusion that because C is not a party to the lawsuit, the case lacks "two or more [parties to the lawsuit] who act in a common scheme" and therefore subdivision 1(2), which provides for joint and several liability for participants in a common scheme, does not apply. Clearly, this outcome is inconsistent with the plain meaning of the statute. It is unreasonable to conclude that the Legislature intended participants in a common scheme to be jointly and severally liable if more than one of the participants is a party to a lawsuit, but merely severally liable if only one participant is a party to the lawsuit and the jury apportions some fault to a defendant tortfeasor who did not participate in the scheme.

sota. The dispute here centers on whether the 2003 amendments altered the common law in this situation—a case involving a single defendant. Under established principles of statutory construction, we must presume that statutes are consistent with the common law. *In re Shetsky*, 239 Minn. 463, 469, 60 N.W.2d 40, 45 (1953). We will not construe a statute as abrogating or modifying the common law "unless the statute does so explicitly." *Nelson v. Productive Alts., Inc.*, 715 N.W.2d 452, 455 (Minn.2006).

The majority acknowledges that we "do not presume that the Legislature intends to abrogate or modify a common law rule except to the extent expressly declared or clearly indicated in the statute." Therefore, before proceeding to the language of the statute, I first examine the common law that applies in this situation. Under Minnesota common law, joint and several liability is the general rule in cases involving multiple tortfeasors that have caused a single, indivisible injury to a plaintiff. *See Flaherty v. Northern Pac. Ry. Co.*, 39 Minn. 328, 329, 40 N.W. 160, 160–61 (1888). When persons are jointly and severally liable, the plaintiff can hold any or all of those persons liable for the entire resulting injury. *Thorstad v. Doyle*, 199 Minn. 543, 553, 273 N.W. 255, 260 (1937). In other words, if a plaintiff sues a single tortfeasor for her injury, that tortfeasor is liable for the entire injury, notwithstanding the existence of other tortfeasors the plaintiff could have sued. *See Schneider v. Buckman*, 433 N.W.2d 98, 101 (Minn.1988) (explaining that "a plaintiff may sue one, all, or any number of joint tortfeasors"). Therefore, under the circumstances here, a sole defendant like the Diocese, which is 50% at fault for a plaintiff's injury, is liable for the entire award.

The focus here is on the 2003 amendments to Minn. Stat. § 604.02, subd. 1. Act of May 19, 2003, ch. 71, § 1, 2003 Minn. Laws 386. Among other changes, the Legislature changed the language of the triggering clause from "[w]hen two or more persons are *jointly* liable" to "[w]hen two or more persons are *severally* liable." *Id.* (emphasis added). As amended, Minn. Stat. § 604.02, subd. 1, provides:

When two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that the following persons are jointly and severally liable for the whole award:

(1) a person whose fault is greater than 50 percent;

(2) two or more persons who act in a common scheme or plan that results in injury;

(3) a person who commits an intentional tort; or

(4) a person whose liability arises under [certain environmental laws].

The majority concludes that the Legislature modified the common law here based primarily on the Legislature's perceived intent "to limit joint and several liability in Minnesota." The 2003 amendments to section 604.02 do have a significant effect on joint and several liability in cases in which two or more defendants have caused indivisible harm to a plaintiff. But the perceived intent of the Legislature to limit joint and several liability falls far short of the express statutory language needed to modify the common law in situations not controlled by the statutory language-cases involving a single defendant. We presume that the Legislature says what it means in a statute, *Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 758 (Minn.2010), and cannot base our interpretation on what the Legislature might have intended, *see Haghighi v. Russian–Am. Broad. Co.*, 577 N.W.2d 927, 930 (Minn.1998) ("If the literal language of this statute yields an unintended

result, it is up to the legislature to correct it.").

When amending the statute in 2003, the Legislature framed the several liability provision as a conditional statement— "*[w]hen* two or more persons are severally liable." Minn.Stat. § 604.02, subd. 1 (emphasis added). And the Legislature chose to retain the triggering language that requires "*two or more* persons" for the several liability provision to apply. *Id.* (emphasis added). In cases involving a single defendant, there is only one person who can be liable for an award. *See Hurr v. Davis*, 155 Minn. 456, 458–59, 193 N.W. 943, 944 (1923). Thus, in cases with only one defendant, there cannot be two or more persons liable for the award, and the statute, by its plain language, does not apply.

In a previous interpretation of the comparative fault statute, we recognized that although a jury may determine the fault of nonparties, the jury's allocation of fault to nonparties is "of no practical consequence" when "there is but one defendant against whom judgment can be or has been entered." *Schneider*, 433 N.W.2d at 103. For example, in *Schneider*, even though the jury had apportioned fault among a single defendant and other nonparties, we held that the defendant was liable for the entire award because "there are no other defendants against whom judgment can be entered." *Id.; see also Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 330 n. 3 (Minn.1990) (questioning the applicability of the joint and several liability provision of the comparative fault statute in cases in which the plaintiff sues a single defendant). Therefore, our case law supports the conclusion that Minn.Stat. § 604.02, subd. 1, does not apply in a single defendant case. *See Engquist v. Loyas*, 803 N.W.2d 400, 404–05 (Minn.2011) ("Our previous interpretation of a statute guides us in determining its meaning.").[1] Because the several liability provision is not implicated under the circumstances of this case, the common law rule controls, and the Diocese is liable for the entire award.

The majority purports to be relying on legislative intent to support an expansive interpretation of Minn.Stat. § 604.02, subd. 1, but there is no legislative history indicating that the Legislature intended the statute to apply in a single defendant case or that the Legislature even considered how the statute might apply in a single defendant case. *See* Michael K. Steenson, *Joint and Several Liability in Minnesota: The 2003 Model*, 30 Wm.

---

1. The majority's efforts to distinguish these cases fail. The majority indicates that *Schneider* does not support my argument because prior to the 2003 amendments, Minn. Stat. § 604.02, subd. 1 (2002), provided that "[w]hen two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award." According to the majority, "when only one liable person was joined to the suit, that person was liable 'for the whole award.' " That person was liable for the whole award, but because of the common law rule, not the statute. Under the majority's interpretation of the statutory language—"contributions to awards shall be in proportion to the percentage of fault attribut-able to each"—the defendant in *Schneider* would have been required to contribute to the award only in proportion to his percentage of fault, with the plaintiff recovering the uncollectible amounts under the reallocation procedures of the statute. But the court in *Schneider* specifically rejected this analysis, concluding that the reallocation procedures "are not implicated" when there is only one defendant against whom judgment can be entered. 433 N.W.2d at 103. The majority in essence is concluding that the contribution provision has a different meaning after the 2003 amendments, even though the Legislature did not touch that language. Further, in *Imlay*, we were questioning the applicability of the *statute* to cases involving a single defendant. 453 N.W.2d at 330 n. 3

Mitchell L.Rev. 845, 860 (2004) (stating that "[n]o clear guidance concerning the interpretation of the [2003 amendments] appears in the history"). If the Legislature had intended that the statute cover nonparties in this situation, the Legislature could have included an express directive to this effect. *See* Joshua D. Shaw, *Limited Joint and Several Liability Under Section 15–38–15: Application of the Rule and the Special Problem Posed by Nonparty Fault,* 58 S.C. L.Rev. 627, 634–35 & n. 49 (2007) (observing that "jurisdictions that allow juries to allocate fault to nonparties have statutes with express language to that effect" and noting "a multitude of models" for state legislatures to follow).

Moreover, contrary to our rule requiring strict construction of statutes in derogation of the common law, the majority interprets Minn.Stat. § 604.02, subd. 1, as broadly as possible, concluding that "the statute must be interpreted to apply in all circumstances in which a person would otherwise be jointly and severally liable at common law." *See Rosenberg v. Heritage Renovations, LLC,* 685 N.W.2d 320, 327 (Minn. 2004) ("Generally, statutes in derogation of the common law are to be strictly construed."). We should not be so quick to abandon our century-old common law, particularly when our action is based on unexpressed legislative intent. *See Francis v. W. Union Tel. Co.,* 58 Minn. 252, 265, 59 N.W. 1078, 1081 (1894) (stating that it would be "presumptuous" for the court "to lightly discard a [common law] doctrine which has been so long approved").

### B.

The majority essentially rewrites Minn. Stat. § 604.02, subd. 1, in an attempt to make the statute work in a single defendant case. The majority reads "persons" expansively in the several liability provision to include all parties to the transaction, which leads to the conclusion that the several liability provision is triggered by the presence of one defendant and one nonparty tortfeasor. But the majority's construction of the statute is not reasonable when considering the context of the statute as a whole. *See Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000).

The majority's construction of the triggering clause—"[w]hen two or more persons are severally liable"—to include nonparties as "persons" results in an ineffective remedial clause—"contributions to awards shall be in proportion to the percentage of fault attributable to each." Minn.Stat. § 604.02, subd. 1. Because "each" necessarily refers to each "person[ ]" in the triggering clause, and "shall" is mandatory, Minn.Stat. § 645.44, subd. 16 (2010), under the majority's interpretation, each "person[ ]" would have an obligation to contribute to the award, even nonparties. Further, section 604.02, subdivision 1, provides that certain "persons" are "jointly and severally liable for the whole award," for example, "a person whose fault is greater than 50 percent." Minn.Stat. § 604.02, subd. 1(1). Consequently, if the jury had found Richard Staab to be 51% at fault for his wife's injury, and "persons" includes all parties to the transaction, Richard Staab would be a "person[ ]" who is jointly and severally liable for the whole award. Nonparties, however, cannot be required to contribute to the award, let alone be jointly and severally liable for the whole award. *See Hurr v. Davis,* 155 Minn. 456, 459, 193 N.W. 943, 944 (1923) (holding that a judgment against persons not parties to the action was "clearly void for want of jurisdiction").

To avoid holding nonparties liable for an award, the majority effectively rewrites

the statute to provide that contributions to awards shall be in proportion to the percentage of fault attributable to each *person subject to an adverse judgment.* But "[w]e may not add words to a statute." *Johnson v. Cook Cnty.*, 786 N.W.2d 291, 295 (Minn.2010); *see also Beardsley v. Garcia*, 753 N.W.2d 735, 740 (Minn.2008) (declining to interpret statute so as to "effectively rewrite" it because that prerogative belongs to the Legislature). The majority's construction of the statute also does not comport with the language the Legislature actually used. According to the majority, determining which "persons" are severally liable for purposes of the triggering clause does not depend on the judgment because "a person is liable at common law at the moment the tort is committed";[2] however, determining which "persons" must contribute to an award under the remedial clause does depend on the judgment because only parties can be liable for the judgment. This interpretation of section 604.02 violates our rules of construction that require courts to give a consistent meaning to the same terms appearing in the same statute. *See Langston v. Wilson McShane Corp.*, 776 N.W.2d 684, 690 (Minn.2009). Under the majority's interpretation, the word "persons" has different meanings in the same sentence of the same subdivision of the same statute—"persons" in the triggering clause encompasses all parties to the transaction, whereas the reference to "each person" in the remedial clause includes only parties to the case.[3]

The majority's construction of the statute appears to be motivated by a concern

---

2. The majority misapprehends the common law rule that "[c]ommon liability 'is created at the instant the tort is committed.'" *Spitzack v. Schumacher*, 308 Minn. 143, 145, 241 N.W.2d 641, 643 (1976) (quoting *White v. Johnson*, 272 Minn. 363, 371, 137 N.W.2d 674, 679 (1965), *overruled on other grounds by Tolbert v. Gerber Indus., Inc.*, 255 N.W.2d 362, 368 n. 11 (Minn.1977)). The cases relied upon by the majority are all contribution cases for which "common liability" is a prerequisite. *See, e.g., Am. Auto. Ins. Co. v. Molling*, 239 Minn. 74, 76, 57 N.W.2d 847, 849 (1953). In this context, we have explained that "[a] determination of whether common liability exists is to be made at the instant the tort is committed," *Ascheman v. Vill. of Hancock*, 254 N.W.2d 382, 384 (Minn.1977), regardless of whether a joint tortfeasor "'subsequently acquire[s] a particular defense against an injured party,'" *Hammerschmidt v. Moore*, 274 N.W.2d 79, 81 (Minn.1978) (quoting *Spitzack*, 308 Minn. at 145, 241 N.W.2d at 643). Therefore, the common law rule cited by the majority is taken out of context and does not affect the interpretation of Minn.Stat. § 604.02 (2010).

3. To avoid a result that requires nonparties to contribute to the award, the majority also ascribes meaning to the Legislature's choice of the passive voice in the contribution provision. The majority implies that the result here would be different if the Legislature had said, *"each shall contribute* to the award," as opposed to "contributions to awards shall be in proportion to the percentage of fault attributable to each," Minn.Stat. § 604.02, subd. 1. The majority concludes that the statute does not mean what it says—that Minn.Stat. § 604.02, subd. 1, does not address the existence of a particular person's obligation to contribute to the judgment. The Legislature's decision to use the passive voice rather than the active voice makes no difference in the meaning of the statute; the difference is mainly one of style. *See, e.g., McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A.2d 888, 902 n. 6 (1973) (Pomeroy, J., dissenting) ("The difference between the active and passive voices is stylistic only, and it is not such as to change the result.").

In addition, the majority uses strained logic to avoid a result that finds nonparty "persons" jointly and severally liable for the whole award. The majority indicates that the statutory language providing that certain "persons are jointly and severally liable for the whole award," Minn.Stat. § 604.02, subd. 1, does not necessarily mean liability for an award that is "enforceable." It is not reasonable to assume that the Legislature intended to assign responsibility for unenforceable awards.

that requiring the defendant to pay the entire award is not fair, but this has been the common law rule in Minnesota for over a century. *See Flaherty v. Northern Pac. Ry. Co.*, 39 Minn. 328, 329, 40 N.W. 160, 160–61 (1888). The common law places the interests of an innocent plaintiff above the interests of the at-fault tortfeasor. *See, e.g., Mathews v. Mills*, 288 Minn. 16, 22, 178 N.W.2d 841, 845 (1970). The result reached by the majority in this case leaves the innocent plaintiff uncompensated for over $100,000 in damages. At the same time, the Diocese acknowledges that a defendant typically would have some recourse in this situation: the "right to bring a third-party claim against any other persons who may have contributed to a plaintiff's injuries." Finally, the majority's construction of Minn.Stat. § 604.02 exposes the statute to constitutional challenges, particularly in the absence of adequate procedural safeguards to protect the rights of plaintiffs whose recovery can be reduced by fault shifted to nonparties.[4]

## C.

Notwithstanding the majority's attempt to limit the payment of the Diocese to the innocent plaintiff, the majority's interpretation of the reallocation provision in section 604.02 will effectively obligate the Diocese to pay the entire award anyway. The reallocation provision provides:

> Upon motion made not later than one year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. A party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Minn.Stat. § 604.02, subd. 2. The majority interprets the term "party" in subdivision 2 to mean "all persons who are parties to the tort, regardless of whether they are named in the lawsuit." Applying that meaning of "party" here, Richard Staab is a party to the tort whose "equitable share of the obligation is uncollectible," Minn. Stat. § 604.02, subd. 2, because he cannot be required to contribute to the judgment. Upon motion, the district court would be required to reallocate that uncollectible amount to the Diocese. *See id.* Accordingly, the majority's interpretation of subdivision 2 undoes the effect of its interpretation of subdivision 1.

## D.

Construing the plain language of the statute, I conclude that the several liability provision in Minn.Stat. § 604.02, subd. 1, applies only when there is more than one party with an obligation to contribute to the award. Consistent with the common law, the Diocese, as the sole defendant, is jointly and severally liable for the entire award. Therefore, I would reverse the

---

4. *See generally* Nancy A. Costello, Note, *Allocating Fault to the Empty Chair: Tort Reform or Deform?*, 76 U. Det. Mercy L.Rev. 571, 581–82 (1999) (noting multitude of constitutional challenges to statutory "empty chair" provisions, a couple of them successful). *See, e.g., Plumb v. Fourth Judicial Dist. Court*, 279 Mont. 363, 927 P.2d 1011, 1019–21 (1996) (holding that apportionment of liability to nonparties violated substantive due process, in part, because juries are likely to assign a disproportionate share of liability to unrepresented parties). Following *Plumb*, the Montana Legislature enacted legislative changes that included major restrictions on comparisons of fault with nonparties and significant procedural safeguards to protect the interests of plaintiffs. *See* Mont.Code Ann. § 27-1-703 (2011).

court of appeals' decision and reinstate the judgment against the Diocese.

PAGE, Justice (dissenting).

I join in the dissent of Justice Meyer.

ANDERSON, PAUL H., Justice (dissenting).

I join in the dissent of Justice Meyer.